1  STEPHEN W. STEELMAN (CSBN 196147)
   *LAW OFFICE OF STEPHEN W. STEELMAN*
2  22 Battery Street, Suite 333
   San Francisco, CA 94111
3  Tel.   (415) 593-3777
   Fax   (415) 593-3778
4

5  Attorney for Plaintiff
   ALEXANDER P. SOMMER
6

7

8           **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
9
                           -oo0oo-
10

| | |
|---|---|
| ALEXANDER P. SOMMER, an individual ) | CASE NO.  C-07-2864 SC |
| ) | |
| Plaintiff, ) | **CERTIFACTE/MEMORANDUM** |
| ) | **OF POINTS AND AUTHORITIES** |
| v. ) | **IN OPPOSITION TO DISMISSAL** |
| ) | **OR, AND THE ALTERNATIVE OF** |
| ) | **JUDICIAL REFERRAL TO JUDGE** |
| UNUM, UNUM PROVIDENT CORPORATION; ) | **JENSEN OR JUDGE ARMSTRONG** |
| UNUM PROVIDENT LIFE INSURANCE ) | **BASED ON RELATION OF CASES** |
| COMPANY OF AMERICA; FIRST UNUM ) | |
| LIFE INSURANCE COMPANY OF AMERICA; ) | Date:         September 21, 2007 |
| PAUL REVERE LIFE ) | Time:         10:00 a.m. |
| INSURANCE COMPANY; ) | Courtroom:   1 (17th Floor) |
| UNITED STATES LIFE INSURANCE ) | |
| COMPANY, ) | |
|     AND DOES 1-300, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Certification: *Sommer* v. *UNUM*

**CAVEAT**

Defendants herein have presented to this court certain documents asserting that plaintiff Alexander Sommer is a vexatious litigant. In response to such assertions, and without regard to the impression such assertions might make on the mind of the court, plaintiff asserts that, unlike these present defendants, he has not been sued by the insurance regulators and or attorneys general of forty-eight states. Moreover, despite a long and successful as a partner in a stockbrokerage firm, plaintiff has never paid a single dollar in fines for the settlement of claims based on improper business practices.

Nor has it ever been said of Mr. Sommer, or any enterprise that he managed, that he, or his enterprise, was an "outlaw company," which are the words that the California Insurance Commissioner used to describe the defendants herein the day he announced the settlement that required UNUM to pay an eight million dollar ($8,000,000.00) fine.

Defendants' claim that, for purely procedural reasons, the present suit is frivolous and plaintiff should be labeled a vexatious litigant. Plaintiff admits that there are procedural issues to be addressed in this case, indeed, he considered these issues before instituting the present lawsuit and has what he believes to be a reasonable chance of successfully addressing such issues.

More importantly, plaintiff believes that it is unlikely that any lawsuit against UNUM is actually frivolous. As plaintiff hopes to be given the opportunity to show, given his day in court, UNUM is a name that belongs, in company with the names ENRON and WorldCom, on the short list of companies that constitute a black mark on the face of American Enterprise.

Alexander Sommer has suffered serious health issues and catastrophic economic dislocation but he is neither vexatious nor frivolous - nor is his claim.

**I**
**FACTUAL BACKGROUND**

Plaintiff Alexander Sommer spent his professional life as a stockbroker. By the age of fifty-one he was a partner and vice president in a major stockbrokerage firm. Alex had, and continues to have, a reputation for hard work, diligence and honesty. Nor is he the sort of person to attempt to abuse the legal system. Before suffering the injuries underlying this lawsuit Alex

Certification: *Sommer* v. *UNUM*                - 2 -

had never been involved in a lawsuit, as a plaintiff or defendant, whether business related or personal, in his entire life.

In late November 1988, Alex was diagnosed with a severe malformation of the blood vessels in his brain. During December of 1988, Alex underwent three separate brain surgeries: one in preparation for repair of the arterial/venous malformation; one to repair the malformation itself; and one as a result of a rare but virulent infection of the brain he suffered as a result of the surgery. Between the three surgeries Alex underwent over twenty-four hours of brain surgery.

Subsequent radiological studies reveal that, as a result of the surgeries and infection, a portion of Alex's brain, approximately the size of a ping-pong ball, is dead. This dead patch in Alex's Brain in located in the area of the brain having to do with higher cognitive function, and especially what are referred to, in the field of brain function analysis, as "administrative functions."

Alex has undergone a series of brain function tests. These tests reveal that Alex has suffered significant injury to his brain's administrative function capacity. Such injuries have resulted in neuro-psychiatric deficits in the following areas:

A. Impulsivity, with an inability to see the consequences of his actions;
B. Significant decline in his ability to retrieve information from memory after long delay;
C. Weakness in the ability to store information requiring associative verbal skills;
D. Verbal learning;
E. Reasoning efficiency;
F. Short term recall;
G. Delayed recall;
H. Sustained auditory attention;
I. Higher level set shifting and inhibition;
J. Generation of strategies for problem solving;
K. Affective control with respect to irritability and; *especially,* with sustained attention and memory.

In fact, as a direct and proximate result of the above noted injuries and disabilities, plaintiff is now, and has been since a date uncertain, before his first surgery in December of 1988, incompetent to work as a stockbroker or to manage his own legal affairs.

At the time of his injuries, as befits a man of conservative disposition, Alex was well insured. In fact, over the course of his career, Alex had purchased several disability insurance policies the monthly benefits of which totaled more than $11,000.00 per month. The Insurers who insured Alex included these present defendants.

Certification: *Sommer* v. *UNUM*                - 3 -

1   Alex had purchased insurance policies both as an individual and through his employer.
2 All of the insurers, except one, denied Alex's claim for disability benefits. As this court is aware,
3 when a person purchases a disability insurance policy as an individual, and should the insurer
4 thereafter wrongfully deny him insurance benefits, that person may recover damages in tort.
5 However, if that same person purchases an insurance policy through his employer, even though he
6 pays all the premiums himself, if the insurer later wrongfully denies him his insurance benefits, he
7 can recover only contract damages.

8   This is significant in the present matter because Alex was insured under both sorts of
9 policies, both privately purchased and purchased through his employer.  Significantly, the only
10 insurer who paid Alex on his disability claim was the one who faced liability for a possible tort
11 damages award if it were found liable for wrongful denial of insurance benefits.  It is noteworthy
12 that that company was wholey owned by UNUM but that UNUM itself, with whom Alex had a
13 separate policy purchased through his employer, did not pay Alex at all because, had they been
14 found liable for wrongful denial of benefits they would only have had to pay Alex his contract
15 benefits, that is, what they should have paid him in the first place.

16   Because Alex's insurers did not pay him the benefits for which he had paid premiums for
17 years, Alex lost his home. Moreover, the precipitous and persistent financial difficulties he
18 suffered as a result of such denials of benefits destroyed his marriage of over twenty years and,
19 because he was broke, he was unable to procure adequate healthcare for his daughter who suffers
20 from a severe chronic illness and whose life, as a direct result of the only intermittent and less
21 than excellent health care she has received, has been much more difficult and unhappy than it
22 otherwise would have been.

23   The actions of the defendants in this case have financially ruined Alex Sommer and torn
24 his family apart.

## II
## PROCEDURAL HISTORY

27   Believing that he had been wrongly denied the benefits due him and for which he had
28 paid, Alex hired a lawyer to sue the insurers.  That lawyer, a solo practitioner in Marin county,

filed on Alex's behalf: a Bankruptcy action; a Securities action; a Wrongful Discharge action, and: an action for wrongful denial of insurance benefits under E.R.I.S.A. So far as is apparent today, the lawyer in question lacked experience in at lest three of these four areas. Most significant for the present action, the attorney in question seems to have lacked any experience whatsoever in E.R.I.S.A. law. As a result, that lawyer filed a court case for wrongful denial of insurance benefits before exhausting Alex administrative remedies.

As noted by the present defendants, that case was dismissed for failure to exhaust administrative remedies. The lawyer, aware that he had made a grievous error, took several appeals, as noted by these present defendants. Such Appeals were denied because the appeals court held that the trial court was correct in it's finding that, under E.R.I.S.A., plaintiff's failure to exhaust administrative remedies merited dismissal with prejudice.

In late 2005, plaintiff discovered that the California Insurance Commissioner had issued certain "findings" regarding UNUM, and certain other companies owned by UNUM, each of whom who had also insured Alex.

Among these findings were that UNUM, and those other companies, had, as a regular business practice:

A.  Knowingly applied a definition of "disability" in claims handling in a manner inconsistent with the definition of "total disability" set forth in California case law;

B.  Mischaracterized the claimant's occupation and/or its duties in determining whether the claimant was disabled from performing with reasonable continuity the substantial and material duties of his or her own occupation;

C.  Selectively using independent medical examinations (IMEs) to UNUM's own advantage;

D.  Overruling the opinion of the attending physician after UNUM's in-house medical personnel conducted a merely "paper review" of the [claimant's] medical file.

E.  Each such act was in violation of California Insurance Code §§ 700 and 704.

Alex believed that he had been harmed by the very practices set forth by the California Insurance Commissioner. He also believed that these "findings" constituted new and different evidence, supporting new and different claims of which he was previously unaware, namely that his former insurers were being run, not as a proper business but as a kind of criminal enterprise designed to take the premiums of himself, and people like him, and to systematically deny

Certification: *Sommer* v. *UNUM*         - 5 -

1  benefits properly due under the policies.

2  Accordingly he brought the present action based on the federal R.I.C.O. statute and
3  California's Unfair Business Practices law.

4  These defendants now seek to have Alex's claim dismissed on the grounds that it is
5  barred by the doctrine of Res Judicata.

6  **III**
**LEGAL ARGUMENT**

7  **A.     Introduction**

8  As noted in a letter filed with this court and served on opposing counsel earlier today,
9  and attached to this letter as **EXHIBIT "A,"** and due solely to a calendaring error on his part,
10  plaintiff's counsel, the present writer, failed to appear for the initial Case Management Conference
11  on September 7, 2007.

12  As a consequence of such failure, this court issued an Order to Show Cause why the case
13  should not be dismissed for "lack of prosecution."

14  In response, defendants have filed a document captioned, "Certificate/Memorandum of
15  Points and Authorities in Support of Dismissal or in the Alternative, to make a Judicial Referral to
16  Judge Jensen and/or Judge Armstrong Regarding Related Cases," (Hereinafter,
17  "Certificate/Memorandum".)  Such, Certificate/Memorandum, does not address the court's
18  concern with plaintiff's alleged "failure to prosecute," as required by the OSC.   In fact,
19  defendants' Certificate/Memorandum, is nothing less than an attempt to have the court dismiss the
20  action on the grounds of Res Judicata.

21  Remarkably, defendant seeks to have plaintiff's case dismissed based on a two paragraph
22  argument that makes no reference whatsoever to plaintiff's present causes of action, the causes of
23  action in what defendants would have the court believe are the "related cases," or, except for the
24  citation of a single case, the elements of Res Judicata or the defenses to the defendants' claim of
25  Res Judicata.

26  Such Memorandum is entirely improper.  If defendants believe that they have legitimate
27  grounds for Summary Judgement or Motion to Strike, then they should bring a properly briefed
28  Motion for Summary Judgment or Motion to Strike in response to which plaintiff which plaintiff

Certification: *Sommer* v. *UNUM*                - 6 -

will have the time and opportunity to properly brief the issues so that the court can give proper consideration to the justness of the parties' claims and defenses.

**B.     The Issue of "Lack of Prosecution"**

This action was first filed in the Superior Court of the State of California on November 14, 2006. It was served on all defendants on May 2, 2007 and removed by defendants to this court on May 31, 2007. Defendants filed their several Answers on June 21, 2007 and by August 21, 2007 the parties had selected an alternative dispute resolution process, reached agreement regarding the timing of initial disclosures and filed a stipulation with the court regarding these issues. On August 31, 2007 the parties filed a Joint Case Management Statement.

On September 7, 2007, plaintiff's counsel failed to appear at the Initial Case Management Conference. The court continued the Case Management Conference to September 21, 2007. Plaintiff's counsel has explained such failure in a writing filed with this court served on opposing counsel, attached hereto as **EXHIBIT"A,"** hereby incorporated by reference into this Certificate as though fully set forth at length hereat, and adopted by the author of this Certificate as part of the Certificate.

Until such time as plaintiff's counsel failed to appear at the initial Case Management Conference, the case was proceeding in accord with the courts schedule as set forth Case Schedule - ADR Multi-Option Program issued by the court on May 31, 2007. After the occurrence of the continued Case Management Conference of September 21, 2007, the case will be entirely back on schedule.

At the present time the parties are in accord that the matter shall be heard by a Early Neutral Evaluater as soon as the court has had the opportunity to consider the Motions for Summary Judgment that both plaintiff and defendants intend to file.

Defendants' MSJ is to be based on a Res Judicata defense. Plaintiff will ask the court to grant partial Summary Judgment as to the issue of the criminal nature of the UNUM enterprises based, in part, on the "findings" regarding UNUM issued by the California Insurance Commissioner. Plaintiff intends to have his Motion for Partial Summary Judgment on file with the court on or before December 15, 2007.

Certification: *Sommer* v. *UNUM*          - 7 -

1    Plaintiff's counsel has admitted his fault and error in failing to appear at the initial Case
2 Management Conference.  He has apologized to the court and opposing counsel for any offense or
3 inconvenience caused by the failure, as set forth in his letter to the court, and has instituted new
4 calendaring practices in his office to avoid an repetition of such failure. (See **EXHIBIT "A"**)
5    With the sole exception of the failure of plaintiff's counsel to appear at the initial Case
6 Management Conference, there is no colorable argument that plaintiff is failing to prosecute this
7 action.  Accordingly plaintiff respectfully requests that the court not dismiss this action for failure
8 to prosecute.

**C.    Defendant's Attempt to Have the Case Dismissed via Certification is Improper**

10    Defendants seek to have plaintiff's entire case dismissed, without bringing any motion,
11 and based on a one paragraph argument setting forth one court's exposition of one element of the
12 doctrine of Res Judicata.  Defendants do not even so much offer an explanation of how those
13 elements apply to the facts in the current case.  The dismissal of a plaintiff's case, and the
14 concurrent denial of that party's right to be heard, without proper procedure, would constitute a
15 major denial of a citizen's right to a fair hearing of his claim.
16    Federal Rule 7(b)(1) provides that:

> An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought.  The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

20    By their "Certificate/Memorandum" defendants seek nothing less than dismissal of
21 plaintiff's entire claim.  There is no Motion before this court, no Notice of Motion has been given
22 and such writing as has been received, defendants Certificate/Memorandum, has been filed and
23 served a mere four days before a hearing on the court's Order to Show Cause at which the issues
24 raised by the "Certificate/Memorandum" will not be before the court and a mere two days before
25 plaintiff is ordered to have this certificate on file.
26    The Federal Rules provide several mechanisms for the dismissal of an action, including
27 those set forth in Rule 12 and Rule 56.
28    In the instant circumstances there is no Motion properly before the court, for this reason

Certification: *Sommer* v. *UNUM*           - 8 -

1  alone, the court should disregard defendants <u>Certificate/Memorandum</u> to the extent that it

2  provides legal argument or seeks dismissal of plaintiff's claim.

3  **D.         The Doctrine of Res Judicata does not Apply**

4  In order to establish a viable Res Judicata defense, the defendant must show that a prior

5  judgment:

6  (1) concerned the same claim as the current action;

7  (2) reached final judgment on the merits, and

8  (3) involved the same parties.

9  Defendants note that, under *Costantini* v. *Trans World Airlines,* 681 F.2d 1199 (1982),

10  cited by defendants to show whether a suit involves the same "claim," as an earlier suit the court

11  must consider four factors:

12  (1) whether rights or interests established in the prior judgment would
   be destroyed or impaired by prosecution of the second action;

13

14  (2) whether substantially the same evidence is presented in the two actions;

15  (3) whether the two suits involve infringement of the same right; and

16  (4) whether the two suits arise out of the same transactional nucleus of
   facts.

17  Defendants offer no analysis regarding any of these issues.  True, there is an, unpublished

18  opinion attached to the "<u>Certificate/Memorandum</u>" as an Exhibit, but the court is left to draw it's

19  own conclusions therefrom.  It is not at all clear how the assertion, by plaintiff, of a civil  R.I.C.O.

20  claim would destroy or impair the rights or interests established in the prior judgment. Plaintiff's

21  current understanding of such prior judgment is that it established in these current defendants the

22  right to have certain administrative remedies exhausted before a claim was filed in court.  Surely

23  defendants can not argue that this court's prior judgment established in defendants the right to run

24  an insurance company as a criminal enterprise, which is what is at issue in the current action.

25  Defendants defense of Res Judicata is not shown by the "<u>Certificate/Memorandum</u>"

26  currently  on file.

27  /   /   /   /   /

28  /   /   /   /   /

Certification: *Sommer* v. *UNUM*              - 9 -

# VI
# CONCLUSION

For the foregoing reasons the court should refuse to consider and otherwise disregard and deny defendants attempt to have plaintiff's case dismissed based on the proffered "Certificate/Memorandum."

Respectfully submitted this 19th day of September, 2007,

By: ___/s/___
STEPHEN STEELMAN
*THE LAW OFFICE OF STEPHEN W. STEELMAN*
Counsel to Plaintiff
ALEXANDER P. SOMMER