

THOMAS M. HERLIHY (SBN 83615)
JOHN T. BURNITE (SBN 162223)
KELLY, HERLIHY & KLEIN LLP
44 Montgomery Street, Suite 2500
San Francisco, CA 94104-4798
Tel.: (415) 951-0535
Fax: (415) 391-7808
Email: herlihy@kelher.com
        jtb@kelher.com


Attorneys for Defendants
UNUM GROUP, UNUM LIFE INSURANCE
COMPANY OF AMERICA, FIRST UNUM
LIFE INSURANCE COMPANY OF AMERICA, and THE
PAUL REVERE LIFE INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER P. SOMMER, an individual, by and through his Guardian ad Litem, CHRISTIAN SOMMER,<br><br>    Plaintiff,<br><br>  vs.<br><br>UNUM, UNUMPROVIDENT CORPORATION; UNUM PROVIDENT LIFE INSURANCE COMPANY OF AMERICA; FIRST UNUM LIFE INSURANCE COMPANY OF AMERICA; PAUL REVERE LIFE INSURANCE COMPANY,<br><br>    Defendants. | Case No.:  C07-2846 SC<br><br>**DECLARATION OF JOHN T. BURNTIE IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS UNUM GROUP; UNUM LIFE INSURANCE COMPANY OF AMERICA, FIRST UNUM LIFE INSURANCE COMPANY OF AMERICA, and THE PAUL REVERE LIFE INSURANCE COMPANY**<br><br>**Specially Set For Submission on the Papers**<br><br>**Ctrm.  1 (17th Floor)** |

1    I, John T. Burnite, declare:

2    1.    I am an attorney at law duly admitted to practice in all courts in the State of

3    California. I am an associate with the law offices of Kelly, Herlihy & Klein, LLP. Our office

4    represents defendants UNUM Group f/k/a UnumProvident Corporation, Unum Life Insurance

5    Company of America, First Unum Life Insurance Company of America, and The Paul Revere

6    Life Insurance Company (herein "defendants") in the above-captioned matter. I am one of the

7    attorneys responsible for the handling of this matter on behalf of defendants. I submit this

8    declaration in support of the motion to dismiss. I have personal knowledge of the facts to which

9    I declare, and if called as a witness could competently and completely testify to them.

10    2.    Attached hereto as Exhibit 1 is a true and correct copy of the "Complaint for

11    Damages Against Disability Insurer (Bad Faith Insurance)" filed by Plaintiff Alexander P.

12    Sommer on May 22, 1996 in the action entitled: *Sommer v. First Unum Life Insurance, et al.,*

13    Superior Court for the State of California, City and County of San Francisco, Case No. 978466

14    ("*Sommer I*").

15    3.    Attached hereto as Exhibit 2 is a true and correct copy of the first page of the

16    Notice of Removal for *Sommer I.* The action was removed on July 2, 1996 by defendant, Unum

17    Life Insurance Company of America (erroneously sued as First Unum Life Insurance Company)

18    to The United States District Court, Northern District of California, Case No. C96-2407 DLJ.

19    4.    Attached hereto as Exhibit 3 is a true and correct copy of the "First Amended

20    Complaint for Damages Against Disability Insurers (ERISA)" filed in *Sommer I* in The United

21    States District Court, Northern District of California, Case No. C96-2407 DLJ. Plaintiff did not

22    re-name First Unum Life Insurance Company as a defendant, but named Unum Life Insurance

23    Company of America and Paul Revere Life Insurance Company as a defendant, among others.

24    5.    Attached hereto as Exhibit 4 is a true and correct copy of the Order granting

25    summary judgment in favor of Paul Revere and Unum Life in *Sommer I.* Attached respectively

26    as Exhibits 5 and 6 are true and correct copies of the Judgments filed in *Sommer I* in favor of

27    Paul Revere and Unum Life.

28

-1-

6.    Attached hereto as Exhibit 7 is a true and correct copy of the Memorandum in *Sommer I* regarding plaintiff's appeal to the United States Court of Appeals for the Ninth Circuit, Case No. 97-16564. The Memorandum was filed on March 24, 1999, and affirmed the judgments in favor of defendants.

7.    In addition to *Sommer I*, plaintiff also previously filed the following lawsuits: *Sommer v. Unum Life, et al.*, United States District Court, Northern District of California, Case No. CV-97-4159 SBA (*Sommer II*); and *Sommer v. Unum Life, et al.*, the United States District Court, Northern District of California, Case No. CV-00-01368 SBA (*Sommer III*).

8.    Attached hereto as Exhibit 8 is a true and correct copy of the Memorandum arising from *Sommer II* regarding plaintiff's appeal to the United States Court of Appeals for the Ninth Circuit, Case No. 98-16340. The Memorandum was filed on March 24, 1999 and affirmed dismissal of *Sommer II* under the doctrine of res judicata.

9.    Attached hereto as Exhibit 9 is a true and correct copy of the Memorandum arising from *Sommer I, Sommer II, and Sommer III* regarding plaintiff's appeal to the United States Court of Appeals for the Ninth Circuit, Case Nos. 01-15733, 01-15734, 01-15735, and 01-15736. The Memorandum was filed on May 10, 2002. The Ninth Circuit affirmed the dismissal of *Sommer III* on res judicata grounds, upheld the imposition of $2,500 in Rule 11 sanctions and upheld the award of $6,574.85 in attorneys' fees and costs. The Ninth Circuit also affirmed the *Sommer I* court's denial of plaintiff's Rule 60(a) motion.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed the 1st day of October, 2007, at San Francisco, California.

_____
John T. Burnite

E:\27162\P10.doc

-2-

**EXHIBIT 1**

ENDORSED
FILED
San Francisco County Superior Court

MAY 2 2 1996

ALAN CARLSON, Clerk
MONICO MATEO
BY: _____
                    Deputy Clerk

1 | JOHN G. WARNER, #046123
ROBERT R. NELLER, #169513
2 | Law Offices of John G. Warner
21 Tamal Vista Blvd.
3 | Suite 196
Corte Madera, CA  94925
4 | (415) 924-2640
(415) 927-0608 (Fax)

5 |

6 | Attorneys for Plaintiff
Alexander P. Sommer

7 |

PLAN I                    8:30 A.M.
STATUS CONFERENCE DATE: OCT 18 1996

8 |          SUPERIOR COURT FOR THE STATE OF CALIFORNIA

9 |             CITY AND COUNTY OF SAN FRANCISCO

10 |

11 | ALEXANDER P. SOMMER, an          )   Case No. **978466**
individual,                       )
12 |                                  )
                    Plaintiff,     )
13 | vs.                              )
                                   )
14 | FIRST UNUM LIFE INSURANCE COMPANY, )   **COMPLAINT FOR DAMAGES**
a corporation; and DOE ONE through )   **AGAINST DISABILITY INSURER**
15 | DOE TWENTY,                      )      (Bad Faith Insurance)
                                   )
16 |                    Defendants.  )
                                   )
17 | _____ )

18 |

19 |                        **INTRODUCTION**

20 |          1.   Plaintiff, Alexander P. Sommer, is an individual

who resides in Mill Valley, California and who during the time

21 | period from January 1993 through January 1996 was employed as an

22 | account executive for two securities dealers known as Piper

23 | Jaffray, Inc. and Wedbush Morgan Securities.

24 |          2.   Defendant, First UNUM Life Insurance Company,

25 | during the time period of plaintiff's employment at Piper

26 | Jaffray, Inc. and Wedbush Morgan Securities as alleged above,

27 | issued long term disability insurance policies to employees such

28 | as plaintiff.  Plaintiff is informed and believes and thereon

1   alleges that the policy numbers for such long term disability

2   insurance at Piper Jaffray, Inc. and at Wedbush Morgan Securities

3   were 31652 and 503420, respectively.

4           3.    Plaintiff is informed and believes and thereon

5   alleges that defendant is and was at all times alleged herein a

6   corporation organized and existing under the laws of a state in

7   the United States with its principal place of business in

8   Portland, Maine, and was authorized under the laws of the State

9   of California to transact business in California as a disability

10  insurer.

11          4.    The true names and capacities, whether individual,

12  corporate, associate or otherwise, of defendants named herein as

13  DOES ONE through DOE TWENTY are unknown to plaintiff who

14  therefore sues said defendants by such fictitious names, and

15  plaintiff will amend this complaint to show their true names and

16  capacities when they have been ascertained.

17          5.    Venue is proper in San Francisco, California

18  because the disability insurance contracts alleged in this

19  complaint were entered into in this county, they were breached in

20  this county, and liability alleged in this complaint arose in

21  this county.  See Code of Civil Procedure §395.5.

22

23          **ISSUANCE OF POLICIES BY DEFENDANT**

24          6.    On or about January 1993 through January 1996

25  defendant issued to plaintiff's employers group disability

26  insurance policies, the exact terms and conditions of which are

27  presently unknown to plaintiff.  Plaintiff is informed and

28  believes and thereon alleges that during the relevant period of

1 time as alleged herein the group disability insurance policies

2 issued by defendant covered any long term disability caused by

3 either accident or illness and the policies provided for the

4 payment of monthly benefits to any person such as plaintiff who

5 sustained long term disability during the relevant period of

6 time.

7         7.    In this complaint the relevant period of time was

8 January 1993 through January 1996.

9         8.    Plaintiff is informed and believes and thereon

10 alleges that during his employment by Piper Jaffray, Inc. the

11 long term disability benefit payable by defendant was $4,511 per

12 month and that during plaintiff's employment by Wedbush Morgan

13 Securities the long term disability benefit payable by defendant

14 was $1,716 per month.

15         9.    Plaintiff has paid all premiums due under the

16 terms of said disability insurance policies, and he has performed

17 all other terms and conditions he was required to perform under

18 said disability insurance policies.

19

20                   **PLAINTIFF'S DISABILITY**

21         10.   On or about November 1988 plaintiff became

22 seriously ill and as a result thereof he had to undergo three

23 separate brain surgeries.  As a proximate result of said illness,

24 plaintiff became totally disabled due to organic brain deficits,

25 and this disability existed during the time when plaintiff was

26 employed by Piper Jaffray, Inc. and Wedbush Morgan Securities.

27

28

1    11.    On or about September 1994 plaintiff filed with

2  defendant a claim for disability benefits payable under the terms

3  of the insurance policies described above.

4    12.    On or about July 1995 defendant rejected

5  plaintiff's disability claim.

6

7                    **FIRST CAUSE OF ACTION**
                 (DEFENDANT'S FAILURE TO PERFORM UNDER
8                    DISABILITY INSURANCE POLICY)

9    13.    Plaintiff hereby realleges and reaffirms all of

10  the allegations set forth in paragraphs 1 through 12 stated

11  above.

12    14.    Defendant has wrongfully breached and continues to

13  wrongfully breach its obligation to pay to plaintiff disability

14  insurance benefits due under the disability insurance policies

15  described above.

16    15.    As a proximate result of defendant's wrongful

17  refusal to pay to plaintiff disability benefits as alleged above,

18  plaintiff has sustained and he will sustain in the future

19  economic damages in an amount in excess of $500,000.

20

21                    **SECOND CAUSE OF ACTION**
                 (DEFENDANT'S BREACH OF DUTY OF GOOD FAITH)
22

23    16.    Plaintiff hereby realleges and reaffirms all of

24  the allegations set forth in paragraphs 1 through 15 stated

25  above.

26    17.    At the time plaintiff applied to defendant for

27  disability insurance disability benefits under the insurance

28  policies described above, defendant knew that plaintiff was

disabled or through reasonable investigation defendant could have

1 | determined that plaintiff was disabled, as the term "disabled" is
2 | used in defendant's policies, and defendant knew or through
3 | reasonable investigation defendant could have determined that
4 | plaintiff was entitled to receive disability benefits under the
5 | policies described in this complaint.

6 |     18.  Therefore, defendant breached the implied covenant
7 | of good faith and fair dealing that exists under the terms of the
8 | disability insurance policies described above, by failing to pay
9 | plaintiff disability insurance benefits due under said policies.

10 |     19.  As a proximate result of defendant's breach of the
11 | implied covenant of good faith and fair dealing as alleged above,
12 | plaintiff has suffered economic damages as described in the first
13 | cause of action, and plaintiff has also suffered non-economic
14 | damages such as emotional distress, mental discomfort, and great
15 | mental pain and suffering.

16 |

17 | **PUNITIVE DAMAGES**

18 |     20.  Plaintiff hereby realleges and reaffirms all of
19 | the allegations set forth in paragraphs 1 through 19 stated
20 | above.

21 |     21.  When defendants breached the implied covenant of
22 | good faith and fair dealing as alleged above, defendant was
23 | guilty of malice and oppression as those terms are defined in
24 | Civil Code §3294, therefore plaintiff is entitled recover from
25 | defendant punitive damages to make an example of and to punish
26 | defendant.

27 |     22.  The amount of such punitive damages is not alleged
28 | at the present time, pursuant to Civil Code §425.10.

1

2                                    **PRAYER**

3        Plaintiff prays for the following relief:

4        (a)   That plaintiff be awarded economic damages according to

5   proof.

6        (b)   That plaintiff be awarded non-economic damages

7   according to proof.

8        (c)   That plaintiff be awarded punitive damages according to

9   proof.

10       (d)   That plaintiff be awarded costs of suit herein

11  incurred.

12       (e)   That plaintiff be granted such other and further relief

13  as the court may deem proper.

14

15                            LAW OFFICES OF JOHN G. WARNER

16

17  Dated:  May 14, 1996

18                            JOHN G. WARNER
                              ROBERT R. NELLER
19                            Attorneys for Plaintiff
                              Alexander P. Sommer
20
    rb\sommer\som0513.ple
21

22

23

24

25

26

27

28

**EXHIBIT 2**

1 | **ADAMS, DUQUE & HAZELTINE, LLP**
Joseph M. Rimac - State Bar No. 72381
2 | Anna M. Martin - State Bar No. 154279
500 Washington Street, Fifth Floor
3 | San Francisco, California 94111
Telephone (415) 982-1240
4 |



FILED

JUL 2 1996

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5 | Attorneys for Defendant
UNUM LIFE INSURANCE COMPANY OF AMERICA
6 | (erroneously sued as FIRST UNUM LIFE INSURANCE COMPANY)

7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10 |

11 | ALEXANDER P. SOMMER, an
individual

Case No. **C-96-2407**

12 |
            Plaintiff,

NOTICE OF REMOVAL OF CIVIL
ACTION TO UNITED STATES
DISTRICT COURT

13 |

14 |     vs.

15 | FIRST UNUM LIFE INSURANCE
COMPANY, a corporation; and DOE
16 | ONE through DOE TWENTY,

            Defendants.

17 |

18 |

19 |        PLEASE TAKE NOTICE that Defendant UNUM LIFE INSURANCE

20 | COMPANY OF AMERICA (hereinafter "Defendant"), (erroneously served

21 | and sued herein as FIRST UNUM LIFE INSURANCE COMPANY), hereby

22 | removes the above-entitled civil action from the Superior Court

23 | of the State of California for the County of San Francisco to the

24 | United States District Court for the Northern District of

25 | California, pursuant to 28 U.S.C. §§ 1331 and 1441 and 29 U.S.C.

26 | § 1332, et seq., and alleges as follows:

27 |        1.   On or about May 22, 1996, there was filed in the

28 | Superior Court of the State of California for the County of San

NOTICE OF REMOVAL                                    Law Offices of
                                    **ADAMS, DUQUE & HAZELTINE, LLP**

**EXHIBIT 3**

```
 1  JOHN G. WARNER, #046123
    ROBERT R. NELLER, #169513
 2  Law Offices of John G. Warner
    21 Tamal Vista Blvd.
 3  Suite 196
    Corte Madera, CA  94925
 4  (415) 924-2640
    (415) 927-0608 (Fax)
 5
 6  Attorneys for Plaintiff
    Alexander P. Sommer
 7
 8                  UNITED STATES DISTRICT COURT
 9           FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11  ALEXANDER P. SOMMER, an        )  Case No. C-96-02407 DLJ
    individual,                    )
12                                 )
                    Plaintiff,     )
13  vs.                            )
                                   )
14  UNUM LIFE INSURANCE COMPANY OF )
    AMERICA, a corporation; THE PAUL)
15  REVERE LIFE INSURANCE COMPANY; )
    HENRY F. SWIFT & Co., Plan     )  FIRST AMENDED COMPLAINT
16  Administrator of group long term)  FOR DAMAGES AGAINST
    disability insurance for Henry F.) DISABILITY INSURERS
17  Swift & Co.; PIPER JAFFRAY, INC.,)      (ERISA)
    Plan Administrator of group long )
18  term disability insurance for Piper)
    Jaffray, Inc.; SECURITY INDUSTRY )
19  BENEFITS SERVICES, a corporation,)
    Plan Administrator of group long )
20  term disability insurance for   )
    Wedbush Morgan Securities; and DOE)
21  ONE through DOE TWENTY,         )
                                    )
22                  Defendants.     )
    ─────────────────────────────────
23
24                    __INTRODUCTION__
25          1.   Plaintiff, Alexander P. Sommer, is an individual
26  who resides in Mill Valley, California and who during the
27  relevant period of time from November 1988 through January 1996
28  was employed as an account executive for three securities dealers
```

known as Henry F. Swift & Co., Piper Jaffray, Inc. and Wedbush Morgan Securities.

2.    Defendant, The Paul Revere Life Insurance Company ("Paul Revere"), during plaintiff's employment at Henry F. Swift & Co. as alleged above, issued long term disability policies to employees such as plaintiff.  Plaintiff is informed and believes and thereon alleges that the policy number for such long term disability insurance at Henry F. Swift & co. was GLT-6635.

3.    Defendant, UNUM Life Insurance Company of America ("UNUM"), during plaintiff's employment at Piper Jaffray, Inc. and Wedbush Morgan Securities as alleged above, issued long term disability insurance policies to employees such as plaintiff. Plaintiff is informed and believes and thereon alleges that the policy numbers for such long term disability insurance at Piper Jaffray, Inc. and at Wedbush Morgan Securities were 31652 and 503420, respectively.

4.    Plaintiff is informed and believes and thereon alleges that defendant Paul Revere is and was at all times alleged herein a corporation organized and existing under the laws of the state in the United States with its principal place of business in Worcester, Massachusetts, and was authorized under the laws of the State of California to transact business in California as a disability insurer.

5.    Plaintiff is informed and believes and thereon alleges that defendant UNUM is and was at all times alleged herein a corporation organized and existing under the laws of a state in the United States with its principal place of business in Portland, Maine, and was authorized under the laws of the

1  State of California to transact business in California as a
2  disability insurer.
3          6.    Defendants Henry F. Swift & Co., Security Industry
4  Benefits Services and Piper Jaffray, Inc. were the respective
5  administrators or trustees of the plans which administered for
6  beneficiaries such as plaintiff the group long term disability
7  insurance benefits provided to employees of the securities
8  dealers as herein alleged above.
9          7.    The true names and capacities, whether individual,
10 corporate, associate or otherwise, of defendants named herein as
11 DOES ONE through DOE TWENTY are unknown to plaintiff who
12 therefore sues said defendants by such fictitious names, and
13 plaintiff will amend this complaint to show their true names and
14 capacities when they have been ascertained.
15         8.    Venue is proper in the Northern District of
16 California because the disability insurance contracts alleged in
17 this complaint were entered into in this district, they were
18 breached in this district, and liability alleged in this
19 complaint arose in this district.
20
21                 **ISSUANCE OF POLICIES BY DEFENDANTS**
22         9.    On or about November 1988 through January 1996
23 defendants issued to plaintiff's employers group disability
24 insurance policies, the exact terms and conditions of which are
25 presently unknown to plaintiff.  Plaintiff is informed and
26 believes and thereon alleges that during the relevant period of
27 time as alleged herein the group disability insurance policies
28 issued by defendants covered any long term disability caused by

FIRST AMENDED COMPLAINT   -3-

1  either accident or illness and the policies provided for the

2  payment of monthly benefits to any person such as plaintiff who

3  sustained long term disability during the relevant period of

4  time.

5      10.  In this complaint the relevant period of time was

6  November 1988 through January 1996.

7      11.  Plaintiff is informed and believes and thereon

8  alleges that during his employment by Henry F. Swift & Co. the

9  long term disability benefit payable by defendant Paul Revere was

10  $1,500 per month.  Plaintiff is informed and believes and thereon

11  alleges that during his employment by Piper Jaffray, Inc. the

12  long term disability benefit payable by defendant UNUM was $4,511

13  per month, and that during plaintiff's employment by Wedbush

14  Morgan Securities the long term disability benefit payable by

15  defendant UNUM was $1,716 per month.  These companies and  their

16  disability insurance coverage may be summarized as follows:

17

| Employer | Administrator | Employment Dates | Disability Insurer |
|---|---|---|---|
| Henry F. Swift & Co. | Henry F. Swift & Co. | November 1988-December 1992 | Paul Revere Life Insurance Company |
| Piper Jaffray, Inc. | Piper Jaffray, Inc. | January 1993-August 1994 | UNUM Life Insurance Company of America |
| Wedbush Morgan Securities | Security Industry Benefits Services | September 1994-January 1996 | UNUM Life Insurance Company of America |

25      12.  Plaintiff has paid all premiums due under the

26  terms of said disability insurance policies, and he has performed

27  all other terms and conditions he was required to perform under

28  said disability insurance policies.

FIRST AMENDED COMPLAINT   -4-

**PLAINTIFF'S DISABILITY**

13.   On or about November 1988 plaintiff became seriously ill and as a result thereof he had to undergo three separate brain surgeries.  As a proximate result of said illness, plaintiff became totally disabled due to organic brain deficits, and this disability existed during the time when plaintiff was employed by Henry F. Swift & Co., Piper Jaffray, Inc. and Wedbush Morgan Securities.

14.   On or about September 1994 plaintiff filed with defendant UNUM a claim for disability benefits payable under the terms of the UNUM insurance policies described above.

15.   On or about July 1995 defendant UNUM rejected plaintiff's disability claim.

16.   On various dates plaintiff filed with defendant Paul Revere a claim for disability benefits payable under the terms of the Paul Revere insurance policy described above.

17.   On or about July 1996 defendant Paul Revere rejected plaintiff's disability claim.


**FIRST CAUSE OF ACTION**
(BREACH OF CONTRACT - ERISA)

18.   Plaintiff hereby realleges and reaffirms all of the allegations set forth in paragraphs 1 through 17 stated above.

19.   Each of the disability insurance policies described above is regulated by and under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S. Code §1144(a), (b)(2)(A).  The civil enforcement provisions of ERISA provide, in pertinent part, that an action may be brought by a beneficiary to

1 | recover benefits owed to him or her under the terms of his or her

2 | plan, to enforce his or her rights under the terms of the plan,

3 | or to clarify his or her rights to future benefits under the

4 | terms of the plan.  29 U.S. Code §1132(a)(1)(B).

5 | 20.  Defendants and each of them have wrongfully

6 | breached and continue to breach their obligations to pay to

7 | plaintiff long term disability insurance benefits due under the

8 | disability insurance policies described above.

9 | 21.  As a proximate result of defendants' wrongful

10 | refusal to pay to plaintiff disability benefits as alleged above,

11 | plaintiff has sustained and he will sustain in the future

12 | economic damages in an amount in excess of $500,000.

13 |

14 | **SECOND CAUSE OF ACTION**
(EQUITABLE REMEDIES - ERISA)

15 |

16 | 22.  Plaintiff hereby realleges and reaffirms all of

17 | the allegations set forth in paragraphs 1 through 21 stated

18 | above.

19 | 23.  Under the civil enforcement provision of ERISA,

20 | plaintiff is entitled to obtain an order of this court to compel

21 | defendants, and each of them, to pay to plaintiff future benefits

22 | owed to plaintiff under the terms of the long term disability

23 | insurance polices described above, and plaintiff is also entitled

24 | to an order of this court to clarify plaintiff's rights to any

25 | future benefits owed to plaintiff under the terms of the long

26 | term disability insurance policies described above.

27 |

28 |

FIRST AMENDED COMPLAINT   -6-

1 | **PRAYER**

2 |     Wherefore, plaintiff prays for the following relief:

3 |     (a)  Compensatory damages according to proof as provided by

4 | 29 U.S. Code §1132(a)(1)(B).

5 |     (b)  Equitable remedies to enforce plaintiff's rights or to

6 | clarify his rights as provided by 29 U.S. Code §1132(a)(1)(B).

7 |     (c)  Attorney's fees as provided by 29 U.S. Code

8 | §1132(g)(1).

9 |     (d)  Such other legal or equitable relief as the court deems

10 | appropriate.

11 |

12 |

13 |                   LAW OFFICES OF JOHN G. WARNER

14 |

15 | Dated:  August 5, 1996      _____

16 |                    JOHN G. WARNER
                   Attorney for Plaintiff
                   Alexander P. Sommer

17 |

18 | rb\sommer\pleading\som0801.com

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

# EXHIBIT 4

**FILED**

JUN 17 1997

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1   ALEXANDER P. SOMMER,                    )
2                              Plaintiff,   )
3              v.                           )
                                            )   No. C-96-2407 DLJ
4   UNUM LIFE INSURANCE CO.                 )
    OF AMERICA, et al.,                     )   **ORDER**
5                                           )
                             Defendants.    )
6   _____    )

7

8        On May 28, 1997, the Court heard argument on plaintiff's

9   motion for leave to amend; plaintiff's motion to appoint

10  guardians ad litem; plaintiff's motion to augment record;

11  defendant The Paul Revere Life Insurance Company's motion for

12  summary judgment; and defendant UNUM Life Insurance Company of

13  America's motion for summary judgment.  John G. Warner appeared

14  on behalf of plaintiff; Horace W. Green appeared for defendant

15  Paul Revere; and Joseph M. Rimac appeared for defendant UNUM.

16  Having considered the arguments of counsel, the papers

17  submitted, the applicable law, and the record in this case, the

18  Court hereby rules as follows.

19                        **I.   BACKGROUND**

20  A.    Factual Background and Procedural History

21        Plaintiff Alexander P. Sommer was employed as an account

22  executive for Henry F. Swift & Co. ("Swift"), a securities

23  firm, from November 1988 through December 1992.  Throughout

24  plaintiff's employment with Swift, defendant The Paul Revere

25  Life Insurance Company ("Paul Revere") issued long-term

26  disability insurance policies to employees such as plaintiff.

27  After Swift merged with Piper Jaffray, Inc. ("Piper") in

28

Entered: 6/19/97 mh

*United States District Court*
For the Northern District of California

COPIES MAILED TO
PARTIES OF RECORD

January 1993, plaintiff continued to work as an account executive for Piper.  However, plaintiff was fired by Piper in August 1994 for lack of production.  Approximately one month later, plaintiff obtained employment as an account executive at Wedbush Morgan Securities ("Wedbush"), where he was employed from September 1994 through January 1996.  In January 1996, plaintiff's poor health forced him to terminate this employment.  While plaintiff worked for both Piper and Wedbush, defendant UNUM Life Insurance Company of America ("UNUM") issued long-term disability policies to employees such as plaintiff.

In November 1988, while employed by Swift, plaintiff fell ill and was eventually required to undergo three separate brain surgeries.  Plaintiff alleges that as a result of these surgeries, he was totally disabled during the times he was employed by Swift, Piper, and Wedbush due to organic brain deficits.  On January 15, 1990, plaintiff filed a claim for disability benefits with Paul Revere, which claim was rejected on February 7, 1990.  In September 1994, plaintiff filed a claim with UNUM for disability benefits payable under the terms of the Piper policy.  On July 10, 1995, plaintiff's claim was rejected by UNUM.  On January 26, 1996, plaintiff filed a disability claim with UNUM under the Wedbush policy.  That claim was denied on April 24, 1996.  In addition, plaintiff submitted a second claim to Paul Revere on May 30, 1996, which claim was denied on July 18, 1996.  Plaintiff now alleges that

2

defendants wrongfully breached, and continue to breach, their obligations to pay plaintiff disability insurance benefits due under his employers' group policies.

On May 22, 1996, plaintiff filed a complaint in San Francisco Superior Court against UNUM and twenty DOE defendants for breach of contract and breach of the duty of good faith and fair dealing. On July 2, 1996, defendant UNUM removed the case to federal court claiming federal jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a) & (b)(2)(A). After hearing argument on UNUM's motion to dismiss and plaintiff's motion for leave to amend, this Court granted plaintiff leave to file a first amended complaint ("FAC") alleging ERISA claims against defendants UNUM, Paul Revere, Swift, Piper, and Security Industry Benefits Services, a plan administrator for Wedbush.[1]

Plaintiff's FAC, filed on September 6, 1996, alleges two causes of action under ERISA. First, plaintiff asserts a claim under the civil enforcement provisions of ERISA, 29 U.S.C. § 1132(a)(1)(B), to recover benefits owed to him under the terms of the benefit plans. Second, plaintiff asserts a claim for equitable relief, pursuant to 29 U.S.C. § 1132(a)(3), seeking to compel defendants to pay him future benefits owed under the terms of defendants' respective policies.

Plaintiff now seeks leave to file a second amended

_____

[1] On February 10, 1997, Swift, Piper, and Security Industry Benefits Services were dismissed as defendants in this action pursuant to a stipulation by the parties.

3

complaint ("SAC") in order to add requests for restitution of insurance premiums and for punitive damages under 29 U.S.C. § 1132(a)(3). Plaintiff also seeks to add as a defendant United States Life Insurance Company ("U.S. Life"), which allegedly issued group life insurance policies to employees such as plaintiff while plaintiff was employed with Piper. Plaintiff has also filed a motion for leave to augment the administrative record, and a petition for appointment of guardians ad litem. Meanwhile, defendants Paul Revere and UNUM have filed separate motions for summary judgment on all of plaintiff's claims. In addition to opposing defendants' summary judgment motions, plaintiff has requested that the Court continue any final ruling on those motions pending plaintiff's submission at some later date of counter-motions for summary judgment.

B.    Legal Standard

    1.    Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(e).

In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of

4

United States District Court
For the Northern District of California

material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'"  T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)); Kaiser Cement Corp. v. Fischbach & Moore, Inc., 793 F.2d 1100, 1103-04 (9th Cir.), cert. denied, 479 U.S. 949 (1986).

A moving party who will not have the burden of proof at trial need only point to the insufficiency of the other side's evidence, thereby shifting to the nonmoving party the burden of raising genuine issues of fact by substantial evidence.  T.W. Electric, 809 F.2d at 630 (citing Celotex, 477 U.S. at 323); Kaiser Cement, 793 F.2d at 1103-04.

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party.  T.W. Electric, 809 F.2d at 630-31 (citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986)); Ting v. United States, 927 F.2d 1504, 1509 (9th Cir. 1991).

The evidence the parties present must be admissible.  Fed. R. Civ. P. 56(e).  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  See Falls Riverway Realty, Inc. v. Niagara Falls, 754 F.2d 49 (2nd Cir. 1985);

5

Thornhill Pub. Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Hearsay statements found in affidavits are inadmissible. See, e.g., Fong v. American Airlines, Inc., 626 F.2d 759, 762-63 (9th Cir. 1980). The party who will have the burden of proof must persuade the Court that it will have sufficient admissible evidence to justify going to trial. The standard for judging a motion for summary judgment is the same standard used to judge a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

    2.   Leave to Amend

    Federal Rule of Civil Procedure 15 governs the amendment of complaints. It states that if a responsive pleading has already been filed, the party seeking amendment

> may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a). This rule reflects an underlying policy that disputes should be determined on their merits, and not on the technicalities of pleading rules. See Foman v. Davis, 371 U.S. 178, 181-82 (1962). Accordingly, the Court must be very liberal in granting leave to amend a complaint. Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) (leave to amend granted with "extreme liberality"); Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th

6

Cir. 1989); <u>Genentech, Inc. v. Abbott Laboratories</u>, 127 F.R.D.
529, 530 (N.D. Cal. 1989) (citing <u>DCD Programs, Ltd. v.
Leighton</u>, 833 F.2d 183, 186 (9th Cir. 1987)).

Once a plaintiff has given a legitimate reason for
amending the complaint, the burden shifts to the defendant to
demonstrate why leave to amend should not be granted.
<u>Genentech</u>, 127 F.R.D. at 530-31 (citing <u>Senze-Gel Corp. v.
Sieffhart</u>, 803 F.2d 661, 666 (Fed.Cir. 1986)); William W.
Schwarzer et al., <u>Federal Civil Procedure Before Trial</u>, §
8:415, at 8-75 (1991).  There are several accepted reasons why
leave to amend should not be granted, including the presence of
bad faith on the part of the plaintiff, undue delay, prejudice
to the defendant, futility of amendment, and that the plaintiff
has previously amended the complaint.  <u>See</u> <u>Ascon Properties</u>,
866 F.2d at 1160; <u>McGlinchy v. Shell Chemical Co.</u>, 845 F.2d
802, 809 (9th Cir. 1988).  The Court has the discretion to
determine whether the presence of any of these elements
justifies refusal of a request to amend the complaint; this
discretion is particularly broad where plaintiff has previously
amended the complaint.  <u>Ascon Properties</u>, 866 F.2d at 1160.

## II.  DISCUSSION

Because the Court's rulings on defendants' motions for
summary judgment are dispositive of this case, the Court will
address those motions first.

\\\

\\\

7

United States District Court
For the Northern District of California

A.    Paul Revere's Motion for Summary Judgment

Defendant Paul Revere argues that plaintiff's claims are barred by the applicable statute of limitations.

1.    Relevant Facts

While plaintiff was employed by Swift from November 1988 through September 1992, employees such as plaintiff were covered by a long-term disability insurance policy issued to Swift by Paul Revere.  The Policy provided that Paul Revere was responsible for payment of benefits to employees who were considered totally "disabled" under the following definition:

> "Disability" or "Disabled" means complete inability of the Employee as a result of injury or sickness to engage in any and every duty of his regular occupation and that he is not gainfully employed in any other occupation except under an approved rehabilitation program.

See Green Decl. at ¶ 5 (emphasis added).  The Policy required claimants to submit written notice of disability to Paul Revere, and to provide written proof of loss to Paul Revere, within specified time limits.  Green Decl. ¶¶ 6, 7.  Paul Revere was given sole discretion with respect to administration of claims filed under the Policy.

On January 22, 1990, Paul Revere received plaintiff's claim for disability benefits, accompanied by a letter from plaintiff.  In his claim, plaintiff stated that he had last worked prior to his disability on November 20, 1988, and that he had returned to work in February 1989.  Plaintiff stated in his letter that his condition was a "congenital arterial venus

8

United States District Court

For the Northern District of California

malformation with an aneurism," and that he had had surgeries on November 30, 1988, December 9, 1988, and January 12, 1989. Plaintiff claimed that during December, January, and February, he was "virtually totally disabled."

Mr. Taylor, a Paul Revere Group Claim Examiner, was assigned plaintiff's claim.  On February 6, 1990, Mr. Taylor spoke with a Mr. Moore of Swift to obtain information about plaintiff's work status.  He was told that plaintiff had returned to work during the first week of February 1989.

Based on the information before him, Mr. Taylor determined that no benefits were payable to plaintiff because plaintiff had been totally disabled for less than the three month "elimination period" set forth in the Policy.[2]  See Taylor Decl. at ¶ 7.  Plaintiff was advised of this decision by letter dated February 7, 1990.

On February 9, 1990, after plaintiff's claim had already been denied, Mr. Taylor received an "Attending Physician's Statement of Disability" which diagnosed plaintiff as having "Arteriovenous Malformation, Frontal Lobe."  Plaintiff's doctor, who last saw plaintiff on February 27, 1989, indicated that plaintiff suffered from a slight limitation of functional capacity.  However, he noted that while plaintiff had been

---

[2]  The Policy defines an "elimination period" as "the period of time commencing with the first day of disability during which no benefits are payable as specified in the Schedule of Insurance."  Green Decl, Ex. A. (the Policy), p.2. Under the Schedule of Insurance, the elimination period is listed as "three continuous months."  Policy, p.4.

9

totally disabled from his operations, he was no longer totally disabled. Rather, he remained "partially disabled."

On February 15, 1990, plaintiff appealed the Paul Revere claim denial telephonically, asserting that although he was able to return to work, he was incapable of performing at his former capacity. Mr. Taylor explained to plaintiff that his claim was being denied because he had failed to satisfy the elimination period. Nonetheless, Mr. Taylor agreed to review the matter with his manager. Mr. Taylor then spoke with his manager, Mr. Keenan, who agreed with the denial of plaintiff's claim. Mr. Keenan informed plaintiff by telephone on February 16, 1990 that the denial of his claim would stand because partial disability was not covered by the Policy unless preceded by a three-month period of total disability. Taylor Decl. at ¶ 8.

Effective January 1, 1993, the Paul Revere Policy was terminated at the request of Swift as a result of Swift's merger with Piper. Nevertheless, on June 3, 1996, Paul Revere received a second claim from plaintiff seeking benefits for the same disability as plaintiff had claimed in 1990. On June 21, 1996, plaintiff was asked to provide information as to why his proof of loss for this alleged disability was not submitted in a timely fashion, as required by the Policy. In addition, Paul Revere requested that plaintiff fill out an occupational description form. By letter dated July 18, 1996, Paul Revere notified plaintiff that because his claim had been previously

10

**United States District Court**
For the Northern District of California

evaluated and denied in 1990, the claim would not be reopened. LaFortune Decl. at ¶ 8.  Plaintiff then proceeded to add Paul Revere as a defendant in the present lawsuit.

   2.    <u>Statute of Limitations</u>

      a.   <u>Legal Standard</u>

   Because ERISA does not provide its own statute of limitations for actions seeking benefits against a plan, federal courts must employ the most closely analogous state statute of limitations.  See <u>Northern California Retail Clerks Union v. Jumbo Markets</u>, 906 F.2d 1371, 1372 (9th Cir. 1990) (citation omitted).  The Ninth Circuit holds that the applicable statute of limitations for a claim seeking benefits due under a disability insurance policy is the <u>three-year period</u> provided for in Cal. Ins. Code § 10350.11.  See <u>Nikaido v. Centennial Life Ins. Co.</u>, 42 F.3d 557, 559 (9th Cir. 1994).[3]

   The issue of when the three-year statute of limitations begins to run is a question of federal law.  <u>Nikaido</u>, 42 F.3d at 559 (citing <u>Jumbo Markets</u>, 906 F.2d 1371).  Under the relevant federal case law, the three-year statutory period for filing an ERISA claim related to disability benefits begins to run at the time written proof of loss is required to be

---

      [3]  Likewise, the Paul Revere Policy provides that a claimant must bring any legal action within three years of the expiration of the time within which proof of loss is required, or within any time limitation required by the law of the state in which the employee resides at the time the policy is issued, whichever limitation period is greater.  See Policy, p.10-A.

11

furnished to the insurer.  <u>Nikaido</u>, 42 F.3d at 559.  The Paul Revere Policy, like the policy at issue in <u>Nikaido</u>, contained a "Proof of Loss" section providing that written proof of loss in cases involving continuing loss must be furnished to the Insurance Company within 90 days after the termination of the period for which the Insurance Company is liable.  In <u>Nikaido</u>, the Ninth Circuit found that "the period for which the Company is liable" language refers to each month of disability. <u>Nikaido</u>, 42 F.3d at 560.  The court then stated as follows:

> Written proof of loss is due within ninety days after each monthly period, and any action must be brought within three years of the date that proof of loss is due.
>
> Because the cause of action accrues when proof of loss is due, and proof of loss is due monthly for a continuing disability, the Plan creates a relationship akin to an installment contract.  <u>For each month that a claimant is disabled and the company fails to make payment, a separate cause of action accrues.</u>

<u>Id.</u>  Thus, the court held that any monthly claims a plaintiff can assert for three years prior to filing suit will not be barred by the statute of limitations.  <u>Id.</u>

      b.  <u>Plaintiff's Paul Revere Claim</u>

Paul Revere argues that under <u>Nikaido</u>, plaintiff's claim is time-barred.[4]  As stated above, plaintiff originally filed his claim for benefits and submitted written proof of loss in January of 1990.  The claim indicated that plaintiff was only

---

    [4]  While Paul Revere also argues that the <u>Nikaido</u> holding is incorrect as to when an ERISA cause of action accrues, this Court is bound by <u>Nikaido</u> as precedent in this circuit.

totally disabled from November of 1988 through February of 1989, when he returned to his job. Thus, Paul Revere's potential liability under the terms of the Policy, which covered only total disability, ended in February of 1989. Under these circumstances, plaintiff was required to file proof of loss within 90 days, or no later than May of 1989. Plaintiff then would have been required to bring suit within three years thereafter, or by May of 1992. Because plaintiff did not file suit until 1996, his claim is barred under Nikaido.

Moreover, the Paul Revere Policy was terminated as a result of the merger with Piper on December 31, 1992.[5] Therefore, even if plaintiff was totally disabled throughout his employment with Swift, any proof of loss for a disability covered by the Paul Revere Policy would have had to have been submitted no later than 90 days after the date of termination of that Policy, or no later than April 1, 1993. Any lawsuit based upon such a claim would then have had to have been filed within three years, or no later than April 1, 1996. The present suit was not filed until May of 1996.[6] Therefore, plaintiff's present claim against Paul Revere is barred by the statute of limitations.

Plaintiff concedes that a suit arising out of his 1990

---

[5]  As of January 1, 1993, plaintiff's disability insurance policy was provided by UNUM.

[6]  Paul Revere was not named as a defendant until September of 1996.

13

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

claim would normally be time-barred.  Nonetheless, he argues that California law requires that the statute of limitations be tolled due to his "insanity."  Where a federal court must borrow a state statute of limitations, the court normally must also apply any applicable state tolling rules.  Hardin v. Straub, 109 S.Ct. 1998, 2000 (1988) (holding state tolling statute must be applied in § 1983 case).  Plaintiff here relies upon Cal. Code Civ. Proc. § 352, which states that if a person is entitled to bring an action and is, at the time the cause of action accrues, insane, the time period of the plaintiff's disability is not included as part of the time limited for the commencement of the action.  Cal. Code Civ. Proc. § 352(a) (emphasis added).

According to plaintiff, his mental disability renders him "insane" within the meaning of § 352.  Under California law, a finding that a person is "incapable of caring for his [or her] property or transacting business or understanding the nature or effects of his [or her] acts, [is] equivalent to a finding in express terms that [he or she] was insane within the meaning of the statute of limitations."  Feeley v. Southern Pacific Trans. Co., 234 Cal.App.3d 949, 951-52 (1991) (holding that unconsciousness can qualify as insanity) (quoting Pearl v. Pearl, 177 Cal. 303, 307 (1918)); see also Hsu v. Mt. Zion Hospital, 259 Cal.App.2d 562 (1968).  Section 352 does not require a finding of psychiatric illness; rather, "some mental condition which renders the plaintiff incapable" is sufficient.

14

Feeley, 234 Cal.App.3d at 952.  However, if the allegedly insane person is sufficiently aware of the nature or effects of his acts to be able to comprehend such business transactions as the hiring of an attorney and the instigation of a legal action, the statute of limitations will begin to run against him.  See Hsu, 259 Cal.App.2d at 575.

Plaintiff here claims that there is substantial medical evidence that he has continuously suffered from mental disability since his surgeries in 1988 and 1989.  Plaintiff relies upon reports by two of his doctors, Dr. Bryant, a neurologist, and Dr. Apter, plaintiff's treating physician. See Warner Decl., Exs. A, B, & D.  Dr. Bryant states in his report that plaintiff became permanently and totally disabled when he was terminated by Piper in 1994 for lack of production. As to plaintiff's condition prior to 1994, Dr. Apter merely states that plaintiff returned to work in 1989 with a disability the extent of which was not fully established.

The Court finds that plaintiff was not "insane" within the meaning of § 352 at the time his claim against Paul Revere arose.  As Paul Revere points out, plaintiff continued to transact business as a securities industry account executive from February 1989 through January 1996.  See Warner Decl., Exs. A & B; Pl's Decl. at ¶¶ 3, 6-9, 13-14.  According to Dr. Bryant, the onset of plaintiff's disability was 1988, but plaintiff did not become totally and permanently disabled until 1994, long after he had ceased working for Swift.  Moreover,

15

United States District Court

For the Northern District of California

while plaintiff claims that his earnings steadily declined after his surgeries,[7] and that he had difficulty keeping track of information, he also states that he continued to maintain a "high level of clientele." Pl's Decl. at ¶ 7. Thus, it appears to the Court that plaintiff was competent to transact business and to understand the nature of his acts during the relevant time period.

Furthermore, there is no question that plaintiff was sufficiently competent to file several disability claims, to appeal those claims, and to hire a lawyer and file suit after his benefits claims were finally denied. For these reasons, the Court finds that the three-year statute of limitations should not be tolled due to insanity, and that plaintiff's claim against Paul Revere is barred.[8]

B.    UNUM's Motion for Summary Judgment

UNUM moves for summary judgment on three issues:   (1) standard of review; (2) scope of review; and (3) liability.

1.    Standard of Review

A determination that denies benefits under an ERISA plan

---

[7]   While plaintiff's income dropped considerably immediately after his surgery, his income fluctuated over the years 1988-1995, with earnings ranging from $26,827 (1995) all the way up to $89,847 (1991).   See Sommer Decl., Ex. A.

[8]   As to plaintiff's 1996 disability benefits claim, the Court finds that Paul Revere's refusal to reopen the case was justified because the 1996 claim was untimely filed under the Policy's proof of loss and notice provisions.   As discussed above, plaintiff has made no showing that he was incapable of filing a claim in the years between the filing of his original claim and his 1996 claim.

16

is reviewed <u>de novo</u> unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. <u>Firestone Tire and Rubber Co. v. Bruch</u>, 109 S.Ct. 948, 956-57 (1989). When such discretionary authority is conferred, the exercise of discretion is reviewed under the arbitrary and capricious, or abuse of discretion, standard. <u>Snow v. Standard Insurance Co.</u>, 87 F.3d 327, 330 (9th Cir. 1996). If a plan administrator has authority to determine eligibility for benefits, discretion is inherently conferred upon that administrator. <u>Id.</u>

The Ninth Circuit has been fairly liberal in its determinations that discretion is conferred upon plan administrators, holding that "a plan does confer discretion when it includes even one important discretionary element, and the power to apply that element is unambiguously retained by its administrator." <u>Id.</u> (quoting <u>Bogue v. Ampex Corp.</u>, 976 F.2d 1319, 1325 (9th Cir. 1992), <u>cert. denied</u>, 507 U.S. 1031 (1993)). Here, the UNUM Policies at issue provide for UNUM to pay disability benefits upon "proof that an insured is disabled due to sickness or injury and requires the regular attendance of a physician."[9] Because it is clear that UNUM was given

---

[9] This is similar to the plan at issue in <u>Snow</u>, which provided that there would be no benefit payment unless Standard Insurance was presented with "satisfactory written proof of the claimed loss." <u>Snow</u>, 87 F.3d at 330. The Ninth Circuit in <u>Snow</u> upheld the district court's application of the abuse of discretion standard.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

authority to determine whether a participant was eligible for benefits based on its review of the proof submitted, the Court finds that both the Piper and the Wedbush plans conferred discretion upon UNUM. Consequently, UNUM's decisions are to be reviewed for abuse of discretion.[10]

2.    Scope of Review

a.    Legal Standard

Under the abuse of discretion standard, a district court may review only evidence which was presented to the plan trustee or administrator.  See Task v. Equitable Life Assurance Society, 9 F.3d 1469, 1471-72 (9th Cir. 1993); see also McKenzie v. General Telephone Co. of California, 41 F.3d 1310, 1316 (9th Cir. 1994); Jones v. Laborers Health & Welfare Trust, 906 F.2d 480 (9th Cir. 1990).  Thus, any evidence which was not part of the administrative record before UNUM at the time it decided to deny plaintiff's benefits claims cannot be examined by this Court.

b.    Plaintiff's Motion to Augment Record

Despite the above-stated legal principle, plaintiff has filed a motion to augment the administrative record to make available to defendants all of plaintiff's medical records, including recent reports from his physicians.  What plaintiff

---

[10]  The Court notes that two other district court judges in this district have reviewed UNUM plans with identical policy language and have come to the same conclusion.  See Legan v. Unum Life Ins. of America, C-95-20495 JW (October 30, 1996); Elizabeth Conway v. UNUM Life Ins. Co. of America, C-95-4412 FMS (Dec. 6, 1996).

actually requests is that the Court, regardless of whether it believes that defendants abused their discretion in making their initial benefits determinations, order a remand to the plan administrators to reconsider the denials of benefits in light of new evidence.  However, based on the case law cited above, a remand under such circumstances is not appropriate. Rather, the proper procedure is for this Court to look at the evidence before the administrators at the time of the denials of benefits, and decide, based on that evidence, whether or not the administrators abused their discretion.  Thus, plaintiff's motion to augment the record must be denied.

    3.   <u>UNUM's Liability</u>

UNUM claims that it did not abuse its discretion in finding that plaintiff was not disabled, or alternatively, that any disability arose in 1988, prior to UNUM's coverage.

    a.   <u>Relevant Facts</u>

In January of 1993, plaintiff's employer Swift merged with Piper.  As a result of the merger, plaintiff became employed by Piper as a full time account executive.  UNUM provided the disability insurance coverage for Piper employees such as plaintiff.  Plaintiff's employment with Piper was terminated for lack of production on August 22, 1994.  In September of 1994, plaintiff submitted a disability claim to UNUM under the Piper Policy.  On July 10, 1995, UNUM denied plaintiff's benefits claim on the ground that plaintiff was not disabled under the terms of the Policy.

19

**United States District Court**
For the Northern District of California

Meanwhile, shortly after being terminated by Piper, plaintiff was hired by Wedbush in September of 1994 as an account executive. UNUM also provided the disability insurance coverage for Wedbush employees. After being diagnosed by his neuropsychologist as having an organic brain disorder caused by his previous brain surgeries, plaintiff voluntarily left Wedbush in January of 1996. When he left, plaintiff submitted another disability claim to UNUM, this time under the Wedbush Policy. In April of 1996, UNUM denied plaintiff's claim, again finding that he was not disabled.

i.   The Piper Policy

The UNUM Group Long-Term Disability Policy issued to Piper defines "disability" and "disabled" as follows:

That because of injury or sickness:

> 1. the insured cannot perform each of the material duties of his regular occupation; or

> 2.  the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is

>> a. performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis, and

>> b.  earning at least 20% less per month than his index pre-disability earnings due to that same injury or sickness.

See Policy at L-DEF-4. In addition, the Policy provides as follows:

When the Company receives proof that an insured is

20

disabled due to sickness or injury and requires the regular attendance of a physician, the Company will pay the insured a monthly benefit after the end of the elimination period. The benefit will be paid for the period of disability if the insured gives to the Company proof of continued:

    1.  disability; and

    2.  regular attendance of a physician.

See Policy at L-BEN-1.

Finally, the Piper Policy contains the following provision regarding pre-existing conditions:

Amounts of insurance in excess of $10,000 will be excluded for any disability:

    a. caused by, contributed to, or resulting from a pre-existing condition; and

    b. which begins within twelve months of February 1, 1993.

"Pre-existing condition" means a sickness or injury for which the insured received medical treatment, consultation, care or services including diagnostic measures, or had taken prescribed drugs or medicines in the three months prior to February 1, 1993.

See Policy at L-PS-1.

### ii.  The Wedbush Policy

Under Wedbush's UNUM Policy, "disability" and "disabled" are defined as follows:

That because of injury or sickness:

    1.  the insured cannot perform each of the material duties of his regular occupation; and

    2.  after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience.

21

See Policy at L-DEF-5.  The Wedbush Policy also includes a proof of disability provision and a pre-existing conditions provision identical to the provisions in Piper's UNUM Policy.

         b.    Abuse of Discretion Standard

    Under the abuse of discretion standard, ERISA trustees have "wide discretion 'short of plainly unjust measures' to decide questions of eligibility." Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1308 (9th Cir. 1986); see also Fielding v. International Harvester Co., 815 F.2d 1254, 1256 (9th Cir. 1987).  Any reasonable interpretation by the plan administrator of the plan terms should be upheld. Fielding, 815 F.2d at 1256 (citing Hancock, 787 F.2d at 1308).

    It is an abuse of discretion for an administrator to make a decision without any explanation, or in a way that conflicts with the plain language of the plan, or that is based on clearly erroneous findings of fact.  Snow, 87 F.3d at 331 (citations omitted).  However, an administrator's decision should not be overturned where there is "substantial evidence to support the decision, that is, where there is 'relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence.'"  Id. at 332.

    Recently, in Booton v. Lockheed Medical Benefit Plan, 110 F.3d 1461, 1463, 1465 (9th Cir. 1997), the Ninth Circuit held that an ERISA plan administrator who denies a claim for benefits must engage in a "meaningful dialogue" with the plan

22

United States District Court
For the Northern District of California

beneficiary, communicating in terms that are "responsive and intelligible to the ordinary reader."  Citing the federal regulations concerning ERISA, the court stated that an ERISA plan "shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:  (1) The specific reason or reasons for the denial; (2) Specific reference to pertinent plan provisions on which the denial is based; (3) A description of any additional material or information necessary for the claimant to perfect the claim and explanation of why such material or information is necessary; and (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review."  Id. at 1463 (citing 29 C.F.R. § 2560.503-1(f)).

To deny a claim without obtaining relevant information is an abuse of discretion; however, where a plan administrator does request the needed information and offers a rational reason for its denial, it is entitled to substantial deference. Id. at 1464 (citations omitted).

       c.   Plaintiff's Piper Claim

          i.   The Administrative Record

UNUM argues that it did not abuse its discretion because benefits were not due plaintiff under the terms of the Piper plan.  On July 10, 1995, plaintiff's benefits were denied under the Piper Policy because UNUM determined that plaintiff was not disabled.  Upon review, UNUM further determined that even if

23

plaintiff was disabled, it was the result of a pre-existing condition, which was excluded from coverage.

In making its initial decision, UNUM considered plaintiff's claim form filled out on September 26, 1994, as well as a statement by plaintiff's physician, Dr. Steven Fugaro, and a "Long-Term Disability Claim Job Analysis" completed by plaintiff's Branch Manager at Piper.  In his claim, plaintiff stated that he had been able to work, but not at his former level, following his surgeries in 1988 and 1989. When asked the last date on which he was able to work before the onset of the disability, plaintiff wrote "November 1988." He also stated that he returned to work full time in 1989.  On the form completed by Dr. Fugaro, the doctor indicated that plaintiff's symptoms, first appearing in 1989, were "fatigue/confusion/occasional seizures."

After reviewing these documents, an UNUM representative, Ms. Swain, wrote plaintiff on May 23, 1995 requesting further information, including a form to be completed by the physician who treated plaintiff from August 24, 1994 forward.  On May 31, 1995, plaintiff sent UNUM further medical records, including a statement from Dr. Apter, plaintiff's treating physician. According to his statement, Dr. Apter first examined plaintiff on November 20, 1994.  Dr. Apter indicated a primary diagnosis of seizure disorder, organic brain syndrome, and ruptured intracranial AVM.  He listed as plaintiff's symptoms, first appearing in 1989, memory problems, difficulty hearing, and

24

United States District Court
For the Northern District of California

fatigue related to exertion.  According to Dr. Apter, plaintiff was "unable to carry out his work at the high functioning intellectual level it demands."  The prognosis for recovery was listed as "poor."

On June 13, 1995, Ms. Swain wrote plaintiff again, this time indicating that UNUM needed a medical certification of plaintiff's disability as of August 22, 1994.  Accordingly, plaintiff sent Ms. Swain a June 16, 1995 letter from Dr. Fugaro certifying that plaintiff had "significant disabilities related to his seizure disorder and chronic brain injury secondary to his craniotomy and prior brain abscess" while under Dr. Fugaro's care from January through November 1994.  Plaintiff also enclosed a letter from Dr. Apter, dated June 23, 1995, certifying that plaintiff was currently "disabled due to his previous brain injury and seizure disorder and ongoing medications."  Dr. Apter also stated that it was his belief that plaintiff could not "carry out his work which requires a high level of functioning."

Ms. Swain also wrote Piper requesting further information regarding plaintiff's employment history.  On June 20, 1995, Piper sent UNUM plaintiff's employee file, including a July 5, 1994 letter regarding plaintiff's failure to meet expectations as to his annual production, and the August 22, 1994 termination letter indicating an involuntary discharge for "lack of production."

By letter dated July 10, 1995, Ms. Swain advised plaintiff

25

United States District Court
For the Northern District of California

as follows: "Based on the information currently contained in
our file, we have not been provided with objective or clinical
evidence to support your disability as of August 22, 1994.
Therefore, we must deny your request for benefits."  In the
letter, Ms. Swain summarized the information upon which UNUM
relied in making its decision, and described the process for
appeal of the denial.

Next, plaintiff's insurance agent with respect to an
individual Provident Life and Accident Insurance Company policy
sent Ms. Swain a letter dated July 28, 1995, urging Ms. Swain
to grant plaintiff's UNUM disability claim.[11]  On August 1,
1995, the agent sent Ms. Swain another letter, enclosing a
March 7, 1995 report of Dr. Bryant.  In his report, Dr. Bryant
concluded that there was no question that plaintiff suffered
from true organic brain deficits as a result of the injuries
related to his surgeries.  According to Dr. Bryant, plaintiff's
difficulties involved cognitive skills such as sustained
attention, short-term and delayed recall, mathematics, and
higher-level problem solving.  While Dr. Bryant noted that
these skills were salient to plaintiff's performance as a
stockbroker, it was unclear to Dr. Bryant to what extent
plaintiff's organic deficits were interfering with plaintiff's
ability to work at the level expected of him.  Dr. Bryant
indicated that plaintiff's disability was likely most severe

---

[11]  Plaintiff was receiving disability benefits from
Provident at this time.

immediately after his surgeries, and that plaintiff should have been on disability at that time.

On August 7, 1995, Dr. Fugaro wrote Ms. Swain to "clarify" plaintiff's disability status. Dr. Fugaro stated that despite the fact that plaintiff was employed full time, his brain injury produced "such significant learning disabilities and memory difficulties that he should have been on disability at that time [1994]."

On August 14, 1995, Ms. Swain wrote plaintiff to inform him that UNUM had reviewed this additional information, and had decided that it was insufficient to reverse the previous denial. She further informed plaintiff that his file would be forwarded to UNUM's Quality Review Section for impartial review.

In the course of performing the impartial review, Ms. Jandro, Senior Benefit Analyst of UNUM, sent plaintiff a letter dated November 1, 1995, requesting additional information regarding plaintiff's current employment. By letter dated November 10, 1995, plaintiff sent Ms. Jandro the requested pay stubs, W-2's, and commission reports from Wedbush. After considering this information, Ms. Jandro wrote plaintiff on January 4, 1996 to inform him that it had been determined that the initial decision to deny benefits was appropriate.

In her letter, Ms. Jandro cited the Policy terms regarding pre-existing conditions. Under the relevant Policy provisions, coverage was excluded for any disability arising out of a

27

condition "for which the insured received medical treatment, consultation, care or services . . ., or had taken prescribed drugs or medicines in the three months prior to February 1, 1993," and which disability began within the first 12 months after the effective date of the Policy.  Plaintiff's files indicated that he had taken medications for his brain condition within the three months prior to February 1, 1993, thereby meeting the first criteria for exclusion from coverage.  In addition, Ms. Jandro explained that because plaintiff had suffered an earnings loss of greater than 20% between 1992 and 1993, UNUM found that plaintiff had become disabled under part two of the Policy's definition of disability as early as January 1, 1993.[12]  Because the effective date of coverage for the UNUM Policy was January 1, 1993, and plaintiff became disabled within twelve months of that date, it was determined that he was excluded from coverage.

Furthermore, based on the determination that plaintiff had become disabled as early as January 1, 1993, Ms. Jandro noted that his claim was barred as untimely filed under the Policy's terms.  Finally, by letter dated January 23, 1996, Mr. Jensen, Senior Quality Review Analyst of UNUM, wrote plaintiff upholding the denial of benefits, and concurring in both Ms.

_____

[12]  As pointed out at the hearing on this matter, this determination was technically inaccurate, as plaintiff's earnings for 1993 were yet to be determined as of January 1, 1993.  Nonetheless, looking at plaintiff's claim retrospectively, it is clear that he became disabled under part two of the Policy definition some time during 1993.

28

Swain's and Ms. Jandro's assessments.

### ii.  The Court's Review of UNUM's Denial

The Court is concerned with the fact that UNUM's initial determination that plaintiff was not disabled directly contradicts its determination on appeal that plaintiff was in fact disabled as early as January 1, 1993 as the result of a pre-existing condition.  Nonetheless, this Court does not have the authority to substitute its own judgment for that of UNUM; rather, the Court is only to decide if there is "substantial evidence" to support UNUM's decision.

Under this standard of review, the Court finds that UNUM's denial of benefits must be upheld, as UNUM's determination that any disability suffered by plaintiff was the result of a pre-existing condition was supported by substantial evidence.  The medical evidence submitted by plaintiff clearly indicated that his original brain injury occurred in 1988, and that he was taking medications for his condition immediately prior to his employment with Piper.  Moreover, the evidence can reasonably be read to support a finding that plaintiff was disabled in 1993, within a year of the effective date of the Piper Policy.  Because substantial evidence supports the determination that plaintiff was ineligible for benefits, the Court must uphold UNUM's decision.

Furthermore, the Court finds that UNUM engaged in a meaningful dialogue with plaintiff, as required under Booton. On four separate occasions, UNUM stated the specific reasons

for its denial, citing the pertinent Policy provisions.
Moreover, UNUM repeatedly asked for specific further
information in order to be able to conduct a thorough review of
plaintiff's claim.  Finally, UNUM afforded plaintiff a timely
appeal.  Based on this lengthy process, it cannot reasonably be
argued that UNUM abused its discretion by failing to give
plaintiff's claim adequate consideration.

d.  Plaintiff's Wedbush Claim

In making the decision to deny plaintiff's Wedbush claim,
UNUM relied upon an administrative record which included
plaintiff's claim form, a report from Dr. Apter, and an
Employer's Statement and Job Analysis.  UNUM also requested
further medical and insurance information from plaintiff's
individual disability insurer, which was only willing to
release the insurance information.  On April 24, 1996, Ms.
Kirby, Disability Benefit Specialist of UNUM, wrote plaintiff
denying his benefits claim on the ground that there was no
evidence that there was any change in his condition since 1988
preventing him from continuing to perform in his occupation as
a stockbroker.  Therefore, plaintiff was not considered
"disabled" under the Wedbush Policy.

UNUM argues that because plaintiff failed to appeal this
denial of his benefits, his present ERISA claim must fail.
While the text of ERISA does not mention an exhaustion
doctrine, the Ninth Circuit holds that federal courts should
usually require benefits claimants to exhaust their

30

United States District Court
For the Northern District of California

administrative remedies prior to seeking federal court review of a benefits denial.  <u>Amato v. Bernard</u>, 618 F.2d 559 (9th Cir. 1980); <u>see also</u> <u>Denton v. First National Bank</u>, 765 F.2d 1295, 1303 (5th Cir. 1985) (citing <u>Amato</u>).  Here, plaintiff was informed in the April 24, 1996 letter denying his benefits that he had to file any appeal of UNUM's decision within 60 days of receipt of the notice of denial.  The letter also apprised plaintiff of the appeal procedures.  Rather than file an appeal, plaintiff filed the present lawsuit.  Because plaintiff now makes no argument as to why an administrative appeal would have been futile, the Court holds that his present claim is barred for failure to exhaust administrative remedies.

In sum, the Court finds that summary judgment must be granted in favor of defendants Paul Revere and UNUM on all of plaintiff's claims.  While this ruling basically renders plaintiff's pending motions moot, the Court addresses those motions below for the record.[13]

\\\

---

[13]  As mentioned above, plaintiff has indicated that he intends to file, at some later date, counter-motions for summary judgment based on the <u>Booton</u> decision.  Thus, he requests that the Court delay any final ruling on defendants' present motions for summary judgment pending plaintiff's filing of these counter-motions.

The Court has considered the effect of the <u>Booton</u> decision upon this case.  First, <u>Booton</u> does not have any bearing on the statute of limitations issue with reference to the Paul Revere claim.  Moreover, as discussed herein, the Court finds that UNUM fully complied with the requirements set forth in <u>Booton</u> in assessing the Piper claim.  Finally, <u>Booton</u> does not affect the exhaustion question raised in relation to the Wedbush claim.  For these reasons, the Court does not find it necessary to defer ruling on defendants' present motions.

31

C.    Plaintiff's Motion for Leave to Amend

     Plaintiff seeks leave to amend his complaint to add claims
for (1) restitution of disability and life insurance premiums
paid after plaintiff became disabled, and (2) punitive damages
against Paul Revere and UNUM for their alleged misconduct in
processing plaintiff's disability claims.   In addition,
plaintiff seeks to add as a defendant U.S. Life, which
allegedly issued group life insurance coverage to Piper
employees.   Defendants UNUM and Paul Revere argue that leave to
amend should be denied as futile because plaintiff may not
assert a claim for punitive damages under ERISA.   Paul Revere
also argues that refund of insurance premiums is not a remedy
provided by ERISA.

     In Massachusetts Mutual Life Insurance Co. v. Russell, 105
S.Ct. 3085, 3088 (1985), the United States Supreme Court held
that, under ERISA, a fiduciary to an employee benefit plan
could not be held personally liable to a plan participant or
beneficiary for extracontractual compensatory or punitive
damages caused by improper or untimely processing of benefits
claims under ERISA § 409(a), 29 U.S.C. § 1109(a).   See also
Pilot Life v. Deadeaux, 107 S.Ct. 1549, 1555-57 (1986).   The
Russell Court noted, however, that it would not consider
whether any other provision of ERISA, such as § 502(a)(3), 29
U.S.C. § 1132(a)(3),[14] authorizes recovery of extracontractual

─────────────────

     [14]    Section 502(a)(3), 29 U.S.C. § 1132(a)(3)(B),
provides, in relevant part, that a plan participant may bring a
civil action "to obtain other appropriate equitable relief" to

32

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  damages.  Id. at n.5; id. at 3094 (Brennan, J., concurring)

2      Even though the Supreme Court has not ruled on the precise

3  issue before this Court, the Ninth Circuit has extended Russell

4  to apply to cases brought pursuant to § 502(a)(3).  Looking to

5  the logic of Russell, as well as the legislative history of

6  ERISA, the Ninth Circuit holds that extracontractual damages

7  may not be recovered as "other appropriate equitable relief"

8  under § 502(a)(3).  See Sokol v. Bernstein, 803 F.2d 532, 538

9  (9th Cir. 1986) (no damages for emotional distress under §

10 502(a)(3)); see also, Johnson v. Dist. 2 Marine Eng. Beneficial

11 Ass'n., 857 F.2d 514, 518 (9th Cir. 1988); Hancock, 787 F.2d at

12 1306-07.  Because the Court is bound by this Ninth Circuit

13 precedent, plaintiff's request for leave to state a claim for

14 punitive damages must be denied.[15]

15 \\\

16 \\\

17 \\\

18 \\\

19

20 redress violations or to enforce the provisions of ERISA or the
   terms of the plan.

21      [15]  The Court does, however, find that a restitution claim
22 may be properly brought under ERISA § 1132(a)(1)(B).
   Nevertheless, because the Court finds herein that defendants
23 cannot be held liable to plaintiff, any amendment to state a
   claim for restitution would be futile in this case.
       As to the proposed restitution claim against U.S. Life,
24 the Court will not allow plaintiff to add such a claim against
   a new defendant in light of the fact that summary judgment has
25 been granted in favor of all current defendants.  If plaintiff
   wishes to sue U.S Life, he must do so by filing a separate
26 lawsuit.

27                              33

28

United States District Court
For the Northern District of California

D.    <u>Plaintiff's Petition to Appoint Guardians Ad Litem</u>

Plaintiff requests that his wife and son be appointed to act as his guardians ad litem, out of concern that any judgment or settlement in this case may be declared null and void due to his mental disability.  <u>See</u> <u>Olivera v. Grace</u>, 19 Cal.2d 570, 578 (1942).  Plaintiff presents medical evidence regarding his organic brain deficits.  As discussed above, according to Dr. Bryant, plaintiff is permanently and totally disabled for any occupation in the securities industry.  <u>See</u> Petition, Ex. A. (Suppl. Rpt. of Dr. Bryant).  However, defendant Paul Revere opposes plaintiff's request for appointment of guardians ad litem, arguing that plaintiff has not shown that he is incompetent, or alternatively, that plaintiff's interests are adequately represented by counsel.

Federal Rule of Civil Procedure 17(c) requires the Court to appoint a guardian ad litem for an incompetent person not otherwise represented in an action.  Rule 17(c) also provides the Court with discretion to order as it deems proper for the protection of the incompetent person.  <u>See</u> <u>Krain v. Smallwood</u>, 880 F.2d 1120, 1121 (9th Cir. 1989).  In the present case, plaintiff has made a minimal showing that he is no longer competent to act as a stockbroker; however, he has made no showing that he is incompetent for purposes of prosecuting this suit.  Moreover, the Court finds that plaintiff is adequately represented by counsel even if he is incompetent.  <u>Cf.</u> <u>Id.</u> at 1121.  Therefore, the Court denies plaintiff's petition to

34

appoint guardians ad litem.

### III.   CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

(1) Defendant Paul Revere's motion for summary judgment is GRANTED;

(2) Defendant UNUM's motion for summary judgment is GRANTED;

(3) Plaintiff's motion to augment the administrative record is DENIED;

(4) Plaintiff's motion for leave to amend is DENIED; and

(5) Plaintiff's petition to appoint guardians ad litem is DENIED.


IT IS SO ORDERED.

Dated:    June 17, 1997.


_____
D. Lowell Jensen
United States District Judge

**EXHIBIT 5**

FILED

JUN 17 1997

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ALEXANDER P. SOMMER,            )
                                )
                Plaintiff,      )
                                )
         v.                     )   No. C-96-2407 DLJ
                                )
UNUM LIFE INSURANCE CO.         )   JUDGMENT
OF AMERICA, et al.,             )
                                )
                Defendants.     )
_____)



        Pursuant to the Court's Order issued on June __17__, 1997,

the Court hereby enters judgment in favor of defendant THE PAUL

REVERE LIFE INSURANCE COMPANY and against plaintiff ALEXANDER

P. SOMMER.

        IT IS SO ADJUDGED.

Dated:    June __17__, 1997.

                                    _____
                                        D. Lowell Jensen
                                    United States District Judge

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COPIES MAILED TO
PARTIES OF RECORD

Entered: 6/19/97 mh

# EXHIBIT 6

**FILED**

JUN 17 1997

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ALEXANDER P. SOMMER,              )
                                  )
                  Plaintiff,      )
                                  )
        v.                        )
                                  )   No. C-96-2407 DLJ
UNUM LIFE INSURANCE CO.           )
OF AMERICA, et al.,               )   **JUDGMENT**
                                  )
                  Defendants.     )
_____)

        Pursuant to the Court's Order issued on June ⎯17⎯, 1997,

the Court hereby enters judgment in favor of defendant UNUM

LIFE INSURANCE COMPANY OF AMERICA and against plaintiff

ALEXANDER P. SOMMER.

        IT IS SO ADJUDGED.

Dated:      June ⎯17⎯, 1997.

_____
        D. Lowell Jensen
    United States District Judge

**United States District Court**
For the Northern District of California

COPIES MAILED TO
PARTIES OF RECORD

Entered: 6/19/97

**EXHIBIT 7**

# FILED

MAR 2 4 1999

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEXANDER P. SOMMER, an individual,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA, a corporation; THE PAUL REVERE LIFE INSURANCE COMPANY, a corporation;<br><br>Defendants-Appellants. | No. 97-16564<br><br>D.C. No. CV-96-2407-DLJ<br><br>MEMORANDUM[1] |

Appeal from the United States District Court
for the Northern District of California
D. Lowell Jensen, District Judge, Presiding

Argued and Submitted March 8, 1999
San Francisco, California

---

[1]This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36-3.

Before:    FERNANDEZ and McKEOWN, Circuit Judges, and WEINER,[2]
           Senior District Judge.

Alexander P. Sommer ("Sommer") appeals from the district court's summary judgment in favor of UNUM Life Insurance Company ("UNUM") and the Paul Revere Life Insurance Company ("Paul Revere"). We have jurisdiction under 28 U.S.C. § 1291 and we affirm. We review the district court's grant of summary judgment de novo. Huey v. Honeywell, Inc., 82 F.3d 327, 329 (9th Cir. 1996).

I. Claims Against Paul Revere

Sommer's claims against Paul Revere are barred by the three-year statute of limitations for filing an ERISA claim for wrongful denial of benefits. Nikaido v. Centennial Life Ins. Co., 42 F.3d 557, 559 (9th Cir. 1994). Sommer's argument that he accrued multiple causes of action under the "rolling" statute of limitations rule of Nikaido is precluded by our interpretation of Nikaido in Williams v. UNUM Life Ins. Co., 113 F.3d 1108 (9th Cir. 1997). Under Williams, Sommer's ERISA claim accrued in 1990 when UNUM notified him that his claim was actually denied. Sommer did not seek judicial relief against Paul Revere until 1996, long after the statute of limitations had expired.

---

[2]Honorable Charles R. Weiner, Senior United States District Judge, Eastern District of Pennsylvania, sitting by designation.

Sommer's 1996 claim against Paul Revere is also time-barred because it is essentially the same as the 1990 claim. Under California law, the resubmission of a time-barred claim after the lapse of the limitations period does not revive an insured's right to sue. Love v. Fire Ins. Exchange, 221 Cal.App.3d 1136, 1151 (1990).

Nor was the statute of limitations tolled due to Sommer's "insanity." Cal. Civ. Pro. § 352. A person is "insane" under California law for tolling purposes if he is "incapable of caring for his property or transacting business, or understanding the nature or effects of his acts." Hsu v. Mt. Zion Hospital, 259 Cal.App.2d 562, 571 (1968). Sommer's own actions, continued employment, and substantial income indicate that he was not "insane," but was capable of discovering the circumstances upon which this action is based prior to the lapse of the statute of limitations. Although Sommer argues that a jury must decide the factual question of "insanity," when the material facts are undisputed, the tolling issue may be decided by summary judgment. Feeley v. Southern Pacific Transp. Co., 234 Cal.App.3d 949, 951 (1991).

II. Claims Against UNUM

We need not decide whether the district court erred in applying the abuse of discretion standard of review because the standard of review does not affect the

3

result in this case. Sommer cannot survive UNUM's motion for summary judgment, even under a de novo standard.

We agree with the district court that Sommer's claim is barred by the pre-existing condition provision of UNUM's policy. His sickness falls under the policy's definition of a "pre-existing condition" and also falls under the policy's definition of "disability" because he was able to perform some of his duties as a stockbroker and his 1993 income was more than 20% less than his 1992 income. Sommer's contention that he was not disabled in 1993, but that he was disabled in 1994 when he was fired is not supported by the record.

Nor is Sommer entitled to disability benefits under UNUM's continuity-of-coverage exception because he was not entitled to disability benefits from his prior insurer, Paul Revere.[3] Unlike UNUM's policy, which provides disability benefits for partial disability, the Paul Revere policy provides disability benefits only in the case of total disability. Sommer presented no evidence that he was completely unable to perform "any and every duty" of his occupation as a stockbroker.

Finally, the district court did not abuse its discretion in declining to consider Sommer's argument that exhaustion of administrative remedies would be futile.

---

[3]Sommer sufficiently raised this issue before the district court by raising it at oral argument and therefore, we may address it on appeal. See Mackey v. Pioneer Nat'l Bank, 867 F.2d 520, 524 (9th Cir. 1989).

4

Sommer's argument was presented for the first time in a motion for reconsideration following the grant of summary judgment for UNUM and was based on evidence that Sommer had before him at the time of briefing the summary judgment motion. <u>See</u> <u>Hopkins v. Andaya</u>, 958 F.2d 881, 887 n.5 (9th Cir. 1992).[4]

AFFIRMED.

---

[4]In light of our decision that summary judgment was proper even under a de novo review of UNUM's decision, the remaining issues raised by Sommer are moot.

5

# EXHIBIT 8

**FILED**

MAR 2 4 1999

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS



NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEXANDER P. SOMMER, an individual, | No. 98-16340 |
| Plaintiff-Appellant, | D.C. No. CV-97-04159-SBA |
| v. | MEMORANDUM[1] |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, a corporation; THE PAUL REVERE LIFE INSURANCE COMPANY, a corporation, | |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the Northern District of California
Saundra Brown Armstrong, District Judge, Presiding

Submitted[2] March 8, 1999
San Francisco, California

---

[1]This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36-3.

[2]The panel unanimously finds this case appropriate for submission without argument.  Fed. R. App. P. 34(a)(2).

Before:     FERNANDEZ and McKEOWN, Circuit Judges, and WEINER,[3]
            Senior District Judge.

Alexander P. Sommer ("Sommer") appeals from the district court's dismissal of his complaint, summary judgment in favor of UNUM Life Insurance Company ("UNUM"), denial of Sommer's motion for partial summary judgment, and grant of the motion for sanctions against Sommer's counsel. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

Sommer's claims are barred by the doctrine of res judicata. Res judicata bars the relitigation of claims raised (or that could have been raised) and adjudicated in a prior lawsuit involving the same parties. Costantini v. Trans World Airlines, 681 F.2d 1199, 1201 (9th Cir. 1982). Whether a suit involves the same "claim" as an earlier suit is determined by looking at four factors:

> "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts."

Id. at 1201-02 (quoting Harris v. Jacobs, 621 F.2d 341, 343 (9th Cir. 1980)). The fourth factor is the most important. Id. at 1202.

---

[3]Honorable Charles R. Weiner, Senior United States District Judge, Eastern District of Pennsylvania, sitting by designation.

2

This case and Sommer's prior lawsuit, <u>Sommer v. UNUM Life Ins. Co.</u>, No. 97-16564, also pending before this Court, arise out of the same transactional nucleus of facts: Sommer's brain surgeries in 1988 and 1989; Sommer's application for disability benefits from the Paul Revere Insurance Company ("Paul Revere"); Paul Revere's denial of benefits; Sommer's application for disability benefits from UNUM; and UNUM's denial of benefits. Both of Sommer's lawsuits involve the same parties--Sommer, UNUM, and Paul Revere--and the same claim--wrongful denial of disability benefits under ERISA. Sommer's complaint in each case alleges the same disability, the same cause of disability, and the same alleged right to disability benefits under the same disability policies. The other three factors also establish that Sommer's second suit involves the same "claim" as his prior suit: prosecution of Sommer's second action would impair the rights established in the prior judgment that UNUM and Paul Revere did not violate ERISA in denying Sommer benefits, substantially the same evidence is presented in the two actions, and the two suits involve infringement of the same right--to recover benefits payable from a benefits plan covered by ERISA.

Sommer argues that he has stated a cause of action different from that raised in his first suit because his current cause of action is based upon "new" medical evidence, reports not considered by UNUM and Paul Revere in denying benefits.

3

Although Sommer labels the evidence "new," this evidence was submitted by Sommer in the prior case in a motion to "augment the administrative record" before the plan administrator. The district court denied that motion and the district court's ruling is an issue in the appeal of Sommer's first suit. Allowing Sommer to proceed with his second suit would circumvent the district court's ruling in that case.

Sommer also argues that his current action is not subject to the doctrine of res judicata because it is a claim for benefits under ERISA. No ERISA case from this Court or any other has carved out such an exception to the rules of procedure and we decline to adopt such a rule. We affirm the district court's dismissal of Sommer's complaint on the ground of res judicata.

We lack jurisdiction to reach the issue of the district court's grant of sanctions against Sommer's attorney because a party lacks standing to appeal an order of sanctions against its attorney and there is no evidence in the record that the attorney filed his own appeal of the sanctions order. Estate of Bishop v. Bechtel Power Corp., 905 F.2d 1272, 1276 (9th Cir. 1990). In our discretion, we decline to grant sanctions against Sommer for filing this appeal.

AFFIRMED.

4

**EXHIBIT 9**

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 1 0 2002

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALEXANDER P. SOMMER, | Nos. 01-15733 |
| Plaintiff - Appellant, | D.C. No. CV-00-1368 SBA |
| v. | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | |
| Defendant - Appellee. | |

| | |
|---|---|
| ALEXANDER P. SOMMER, an individual, | No. 01-15734 |
| Plaintiff, | D.C. No. CV-00-01368-SBA |
| v. | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, a corporation, | |
| Defendant - Appellee, | |
| JOHN G. WARNER, | |
| Real-party-in-interest - Appellant. | |

ALEXANDER P. SOMMER, an individual,

       Plaintiff - Appellant,

     v.

FIRST UNUM LIFE INSURANCE
COMPANY, a corporation, et al.,

       Defendants - Appellees.

No. 01-15735

D.C. No.
CV-96-02407-DLJ(PJH)

---

ALEXANDER P. SOMMER, an individual,

       Plaintiff,

     v.

UNUM LIFE INSURANCE COMPANY OF
AMERICA, a corporation;,

       Defendant - Appellee,

JOHN G. WARNER,

       Real-party-in-interest - Appellant.

No. 01-15736

D.C. No. CV-00-1368-SBA

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted April 11, 2002
San Francisco, California

2

Before: SCHROEDER, Chief Judge, B. FLETCHER and KOZINSKI, Circuit Judges

Beginning in the mid-1990s, Appellant Alexander Sommer sought disability benefits under policies he obtained through his employer, Wedbush. Following denial of benefits by appellee UNUM, he sued in federal court.

This panel's consideration is the fifth given to this case in the federal courts. District Court Judge Jensen issued a final judgment in *Sommer I*. This court affirmed the summary judgment. *Sommer v. UNUM Life Ins. Co. of Am.*, 1999 U.S. App. LEXIS 5388 (9th Cir. 1999). Sommer filed his claim with the company again. His claim was for the same disability and the same policy, so UNUM rejected it again. Following this second rejection, Sommer filed his second suit in federal district court. In *Sommer II*, District Judge Armstrong dismissed the case based on lack of jurisdiction because *Sommer I* was pending before the Ninth Circuit and also imposed $1,000 in Rule 11 sanctions. She noted that even if the court did have jurisdiction, *Sommer II* would be barred by res judicata as a result of *Sommer I*. This court agreed, affirming on res judicata grounds. *Sommer v. UNUM Life Ins. Co. of Am.*, 1999 U.S. App. LEXIS 5382 (9th Cir. 1999). After yet another rejection of the same disability claim by UNUM, Sommer brought a third suit, again in Judge Armstrong's court. The district court dismissed *Sommer*

3

*III* on res judicata grounds. The district court also imposed $2,500 in Rule 11 sanctions and assessed attorneys' fees and costs against Sommer's attorney pursuant to 29 U.S.C. § 1132(g)(1).

Sommer appeals these *Sommer III* decisions, as well as Judge Jensen's refusal to amend his final judgment in *Sommer I* per Sommer's Rule 60(a) motion. We have jurisdiction over all of Sommer's claims pursuant to 28 U.S.C. § 1291. We affirm the *Sommer III* district court's decision in all respects. We also affirm the *Sommer I* court's denial of Sommer's Rule 60(a) motion for correction of a clerical mistake.

Because the parties are familiar with the facts underlying Sommer's appeal, we repeat them only as necessary.

Sommer claims that District Judge Armstrong erred when she granted UNUM summary judgment in *Sommer III* on res judicata grounds. We review an order granting summary judgment de novo. *Delta Sav. Bank v. United States*, 265 F.3d 1017, 1021 (9th Cir. 2001). To trigger the doctrine of res judicata, the earlier suit must have (1) involved the same "claim" or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies. *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir. 2002).

4

Sommer argues that res judicata does not apply because Judge Jensen did not, in fact, issue a final judgment on the merits in *Sommer I*. Sommer claims that his failure to exhaust his administrative remedies should have resulted in a dismissal without prejudice rather than summary judgment.

Sommer is incorrect. Summary judgment is an appropriate action where a plaintiff has failed to exhaust ERISA administrative remedies. *Diaz v. United Agric. Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1480 (9th Cir. 1995); *Sarraf v. Standard Ins. Co.*, 102 F.3d 991, 992 (9th Cir. 1996). Judge Jensen recognized as much by citing *Denton v. First Nat'l Bank*, 765 F.2d 1295 (5th Cir. 1985), which holds that, although remand is often desirable, summary judgment is also appropriate where a plaintiff has failed to exhaust remedies.

Next Sommer argues that Judge Armstrong abused her discretion when she imposed Rule 11 sanctions in *Sommer III*. Orders imposing Rule 11 sanctions are reviewed for an abuse of discretion. *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 788 n.16 (9th Cir. 2001). A district court abuses its discretion in imposing sanctions when it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1198 (9th Cir. 1999).

Judge Armstrong imposed Rule 11 sanctions after finding that the *Sommer III* complaint was frivolous in light of *Sommer I* and *Sommer II*. We agree. As Judge Armstrong noted, Sommer's counsel "should have known, after *Sommer I* and *Sommer II*, that the claim for benefits under the Wedbush policy was barred by the doctrine of res judicata." This court held in *Sommer II* that res judicata barred the claims, thus foreclosing relitigation of whether or not there was a final judgment in *Sommer I*. Seeking another bite at the apple by filing *Sommer III* in the hope of a different result was frivolous. Judge Armstrong did not abuse her discretion when she imposed sanctions under Rule 11.

Sommer also challenges Judge Armstrong's order requiring Sommer's attorney to pay $6,574.85 in attorneys' fees and costs to UNUM. Judge Armstrong imposed sanctions under ERISA pursuant to 29 U.S.C. § 1132(g)(1). That section provides:

> In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

In *Hummel v. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980), we set out five factors a court should consider in exercising its discretion to award fees and costs under § 1132(g)(1): (1) the degree of the opposing parties' culpability or bad

6

faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether

an award of fees against the opposing parties would deter others from acting under

similar circumstances; (4) whether the parties requesting fees sought to benefit all

participants and beneficiaries of an ERISA plan or to resolve a significant legal

question regarding ERISA; and (5) the relative merits of the parties' positions. *Id.*

We review an award of attorneys' fees pursuant to ERISA under an abuse of

discretion standard. *Id.* at 452. We will find an abuse of discretion only when we

have a definite conviction that the court made a clear error of judgment in its

conclusion upon weighing relevant factors. *Id.*

Sommer does not argue with the district court's specific findings with

respect to the *Hummel* factors. Instead, he argues that Judge Armstrong did not

have the authority to impose the fees and costs on his attorney because counsel

was not "a participant, beneficiary, or fiduciary" per § 1132(g)(1). Sommer is

mistaken in his reading of the statute. Section 1132(g)(1) requires only that the

underlying action be brought by a participant, beneficiary, or fiduciary. The text in

no way limits the imposition of fees and costs to those entities. Judge Armstrong

stated as much in her order, citing *Corder v. Howard Johnson & Co.*, 53 F.3d 225

(9th Cir. 1995) ("Where one of the above enumerated parties – participant,

beneficiary, or fiduciary – brings an action, the district court has discretion to

7

award attorney's fees to either plaintiffs or defendants.") Judge Armstrong

considered each *Hummel* factor carefully and concluded that *Hummel* factors 1, 2,

3, and 5 weighed strongly in favor of imposing attorneys' costs and fees against

Sommer's counsel. She did not abuse her discretion in awarding UNUM fees and

costs.

Sommer's final claim arises out of *Sommer I* and is very similar to his res

judicata argument in *Sommer III* (see above). While *Sommer III* was pending

before Judge Armstrong, Sommer filed a motion with Judge Jensen pursuant to

Rule 60(a). In it, Sommer argued that Judge Jensen's designation of his final

order in *Sommer I* as a "summary judgment" rather than a "dismissal judgment"

was a clerical error.

Rule 60(a) provides that:

Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party or after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

In his denial of Sommer's Rule 60(a) motion, Judge Jensen made clear that

there was, in fact, no clerical error: he intended his June 17, 1997 order in *Sommer*

8

*I* to be a summary judgment, and not a dismissal without prejudice. As discussed above, either was within the district court's authority because Sommer had failed to exhaust his administrative remedies as ERISA requires. Furthermore, Rule 60(a) applies during the pendency of an appeal. By the time Sommer filed his Rule 60(a) motion, the *Sommer I* appeal had been over for nearly two years.

We affirm the judgments of both district courts. We will not entertain a motion for any additional damages pursuant to Rule 38. These cases are concluded.

AFFIRMED.

9