such policies were mere shams upon which it had never intended to perform and that, in fact, thereby defrauding the court and, by this means, and otherwise, preventing plaintiff from presenting his case.

UNUM hid from the court, and from plaintiff, the fact of it's schemes, thereby depriving the court of the opportunity to consider the case fairly and denying plaintiff of the opportunity to present his case to the court at all.

Plaintiff could not assert his cause of action for violation of RICO or Unfair Business Practices because defendants hid the facts giving rise to the action from himself, from the court and from the public at large. In fact, it required the entire apparatus of the California Department of Insurance, the Attorney General of the State of New York, and of many other states, to bring this ten billion dollar a year company to heel.

Plaintiff was prevented from presenting his claims in court because, despite his diligent attempts to discover every fact underlying his claims (See Complaint, ¶¶ 23-24), these present defendants concealed from plaintiff and from this court the fact of their illegal scheme to intentionally deprive plaintiff, and other policy holders, of their rightful benefits.

The court should allow plaintiff to conduct discovery to allow plaintiff the opportunity to perform discovery and otherwise develop evidence which he believes exists but which is now in the sole possession and control of the defendants showing fraud adequate to overcome the Res Judicata bar.

Further, defendants assertions, in their moving papers, regarding the reasons that the courts who heard plaintiff's initial cases against UNUM dismissed those claims, are moot because those courts were making decisions, as was plaintiff, based on partial and doctored information and incorrectly believing that these defendants were litigating in good faith.

Defendants' Motion to Dismiss based on Res Judicata should be denied because the judgments relied upon were obtained by fraud.

B.   There Is a Strong Public Policy Argument to Deny Defendants' Motion Based on Res Judicata

The law insists on an exception to the Res Judicata defense where there are strong public policy considerations for allowing the case to go forward.

Opposition to Motion to Strike: *Sommer* v. *UNUM*                                                          - 9 -

> We have also recognized that public policy considerations may warrant an exception to the claim preclusion aspect of res judicata, at least where the issue is a question of law rather than of fact.

(*Jenkins* v. *County of Riverside*, 138 Cal.App.4th 593(2006))

Here, of course, there is a question of law involved because of the Insurance Commissioner's findings, subsequent to the entry of any judgment against plaintiff, that UNUM repeatedly violated Insurance Code Sections 700 and 704. The question before the court thus becomes, in part, one of the effect of the concealed violations of statute by UNUM on the lower court's process and judgment.

> In rare cases a judgment may not be res judicata and there are rare instances in which [res judicata] is not applied. In such cases it will not be applied so rigidly as to defeat the ends of justice or important considerations of policy.

(*Robert J.* v. *Leslie M.* 51 Cal.App.4th 1642,(1997)

In the instant case, the Complaint adequately alleges a consortium of defendants, comprising the largest disability insurers in America, running their companies as a criminal enterprise. Strangely, defendants do not welcome the opportunity to defeat these allegations on the merits. This is because the allegations are true and these defendants know them to be true. Rather defendants seek to rely on improperly obtained former judgments to bar the action.    T

This court should not allow such. There is a strong public policy in California, enshrined in statute, requiring that insurers doing business in this state be licensed (certified) by the state. (*California Insurance Code 700 et seq.*) The Insurance Commissioner has found that these present defendants have violated that law. (See Complaint ¶ 29.) Moreover, the Complaint alleges that these defendants so structured, organized and did maintain their respective businesses that defendants UNUM were not legitimate insurance companies at all, but were, rather, a racket a corrupt sham company, an enterprise organized for the purpose of collecting premiums but not paying valid claims. (See Complaint ¶ 41.)

The truth or falsity of these allegations is a matter of significant public interest because, despite promises to the contrary, UNUM has not changed its claims handling practices since entering into settlement with either California or New York, witness the letter from Attorney Bourhis, who assisted both The California Insurance Commissioner and The New York Attorney General in their respective investigations of UNUM. (SSDec EXHIBIT "H").

Opposition to Motion to Strike: *Sommer* v. *UNUM*                                                                                      - 10 -

The people and businesses of this state both need and deserve a reliable, properly functioning, insurance industry. In 18 USC 1961, *et seq.*, the Congress has given the people and the courts a vehicle for safeguarding this interest. Companies like UNUM which flaut their promises, and the law, are a real threat to the safety and welfare of the citizenry and of the efficient function of commerce. This court should recognize the importance to the public of the opportunity to enforce such legislation and allow the case to move forward for reasons of public policy.

Defendants Motion to Dismiss should be denied because it is contrary to public policy.

C.    Res Judicata Does Not Apply Because Plaintiff Seeks Vindication of Different Rights

Finally, plaintiff asserts that the doctrine of Res Judicata does not apply because the relief sought in the present action is based on different rights than the relief sought in any previous action.

As noted above, in addition to identity, or privity, of parties, the doctrine of Res Judicata requires the presence of three elements:

(1) was the previous adjudication on the merits,

(2) was it final, and

(3) does the current dispute involve the same 'claim' or 'cause of action'?

(*Robi v. Five Platters*, (*supra*) *op cit.*

In the instant case, defendants can not show that plaintiff seeks to vindicate the "same claim or cause of action." The criteria by which identity of a claim or cause of action is to be judged in California is well established:

> California has consistently applied the 'primary rights' theory, under which the invasion of one primary right gives rise to a single cause of action. As we recently observed, California's 'primary rights' theory does not mean that different causes of action are involved just because relief may be obtained under ... either of two legal theories."

*Robi,*(*supra*) at 324 (citations and quotation marks omitted).

As shown in the Complaint and First Amended Complaint on attached, as Exhibits 1 and 3, respectively, to the Declaration of John Burnite in support of Defendants' Motion to Dismiss, the primary right plaintiff sought to vindicate in his previous suits against UNUM were rights available to an individual employee, under ERISA, for breach of contract. According to the First Amended Complaint (See EXHIBIT "3" to the Declaration of John Burnite), plaintiff sought to

Opposition to Motion to Strike: *Sommer* v. *UNUM*                                                                                      - 11 -

vindicate such rights exclusively under the *Employee Retirement Income Security Act, ERISA*, codified at *29 USC §1144 et seq.*

In passing *ERISA,* congress made specific findings and offered specific declaration of policy, to whit: at Title 29 USC Chapter 18, Subtitle A. General Provisions

§ 1001. Congressional findings and declaration of policy

(a) Benefit plans as affecting interstate commerce and the Federal taxing power

The Congress finds that the growth in size, scope, and numbers of employee benefit plans in recent years has been rapid and substantial; that the operational scope and economic impact of such plans is increasingly interstate; that the continued well-being and security of millions of employees and their dependents are directly affected by these plans; that they are affected with a national public interest; that they have become an important factor affecting the stability of employment and the successful development of industrial relations; that they have become an important factor in commerce because of the interstate character of their activities, and of the activities of their participants, and the employers, employee organizations, and other entities by which they are established or maintained; that a large volume of the activities of such plans are carried on by means of the mails and instrumentalities of interstate commerce; that owing to the lack of employee information and adequate safeguards concerning their operation, it is desirable in the interests of employees and their beneficiaries, and to provide for the general welfare and the free flow of commerce, that disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of such plans; that they substantially affect the revenues of the United States because they are afforded preferential Federal tax treatment; that despite the enormous growth in such plans many employees with long years of employment are losing anticipated retirement benefits owing to the lack of vesting provisions in such plans; that owing to the inadequacy of current minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits may be endangered; that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits; and that it is therefore desirable in the interests of employees and their beneficiaries, for the protection of the revenue of the United States, and to provide for the free flow of commerce, that minimum standards be provided assuring the equitable character of such plans and their financial soundness.

(b) Protection of interstate commerce and beneficiaries by requiring disclosure and reporting, setting standards of conduct, etc., for fiduciaries

It is hereby declared to be the policy of this chapter to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

(c) Protection of interstate commerce, the Federal taxing power, and beneficiaries by vesting of accrued benefits, setting minimum standards of funding, requiring termination insurance

>It is hereby further declared to be the policy of this chapter to protect interstate commerce, the Federal taxing power, and the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance.

In this code section, Congress has codified the rights that a person may vindicate under *ERISA*. These include:

>The protection of his own and his beneficiaries anticipated benefits, (Sub section (a));

>The protection of interstate commerce and the interests of participants in employee benefit plans and their beneficiaries (Sub section (b));

>The protection of the Federal taxing power, and the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans (Sub section (c)).

Accordingly, these rights, the rights afforded under *ERISA* are the rights that plaintiff sought to vindicate in his previous lawsuits against UNUM.

In the instant case the rights that plaintiff seeks to vindicate are completely different and may be characterized as the right of a citizen to conduct his business in the knowledge that his government is not intentionally providing certification to businesses that are, as a matter of public record, being conducted as criminal enterprises. The Mafia may exist but it is not sanctioned by the legislative, Executive or Judicial branches of government.

*18 USC §1961*, <u>Definitions</u>, provides, in pertinent part as follows:

>As used in this chapter (1) "racketeering activity" means . . .(B) any act which is indictable under any of the following provisions of . . .title 18, United States Code. . . section 1341 (relating to mail fraud).

*18 U.S.C. §1341*, Frauds and Swindles, provides as follows:

>Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to

be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

The Complaint in file herein offers the following definition of the term "UNUM."

Unum Life Insurance Company of America, First Unum Life Insurance Company, all subsidiaries of defendant Unum Provident Corporation (and hereinafter, collectively, along with defendant Unum Provident Corporation referred to as "UNUM,")

The Complaint on file herein alleges that:

Plaintiff is informed and believes, and thereon alleges, that the activity of the enterprise known as UNUM affected interstate commerce, in that defendants UNUM, and each of the other defendants herein, each licensed to do business in and doing business in California as well as other states, utilized insurance agents and brokers and support staff, and otherwise maintained offices in the state of California and in other states, thereby necessitating the use of highways, railways, banking, telecommunications and the U.S. Mails.
(Complaint ¶ 35)

Plaintiff is informed and believes, and based thereon alleges, that defendants UNUM and those DOE defendants named as Does 1-75, *supra*, engaged in a pattern of racketeering conduct by personally causing others to engage in mail and or wire fraud in violation of 18 U.S.C. section 1341, by using the United States mail to transmit fraudulent correspondence and by engaging in the pattern of wrongful, harmful and illegal acts set forth in the findings by the Insurance Commissioner of the State of California as set forth hereinabove.
(Complaint ¶ 39)

Plaintiff here is not seeking to vindicate merely his own contract rights as an employee, rather, plaintiff is seeking to vindicate the rights of himself and others, in fact all citizens, to live in a civil society where businesses that must, according to statute be regulated and licensed by the state can not, simultaneously, be run as criminal enterprises. This is an important right.

In passing both ERISA and RICO the United States Congress recognized the distinction between the rights to be vindicated under those two statutory schemes. A plaintiff prevailing on an ERISA claim is awarded only his contract benefits (*29 USC 1132 (a)(1)(B)*, whereas a plaintiff prevailing on a RICO cause of action may be awarded treble damages.

This distinction is important because it highlights the difference between the rights an ERISA plaintiff seeks to vindicate and those that a RICO plaintiff seeks to vindicate. One

set of rights, the ERISA rights is personal and contractual. The other, under RICO, although arising from an injury to person or property, vindicates the right of society at large to be free of racketeering activity, a much more elementary right that is, accordingly protected by more severe sanctions in the form of treble damages, *18 USC § 1964 (c)*. The United States Congress passed both the ERISA and RICO statutes in providing that a prevailing party in an ERISA action be awarded only his contract benefits while a party prevailing in a RICO action be awarded treble damages, congress recognized the important distinction between the rights to be vindicated by enforcement of ERISA and RICO.

This court should do the same and deny defendants Motion to Dismiss because the element of identity of claims has not been met.

## III
## ARGUMENT IN RE DEFENDANTA REQUEST FOR SANCTIONS

Under rule 11 of this court, <u>Signing of Pleadings, Motions, and Other Papers; Representations to Court; Sanctions</u>:

> **(a) Signature.** Every pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party. Each paper shall state the signer's address and telephone number, if any. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.
>
> **(b) Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> >
> > (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

      **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

      **(c) Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction **upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.**

      (Emphasis added.)

Among the "conditions" referred to in Rule 11(c), *supra*, are the following:

      **(2) Nature of Sanction; Limitations.** A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Defendants have made a motion for sanctions, in the form of attorney's fees, appurtenant to their Motion to Dismiss.

As an initial matter, it is to be noted that plaintiff herein is, and at all times pertinent hereto has been, represented by counsel. Accordingly then, under Rule 11, it is **plaintiff's counsel**, present writer, who has made the above specified representations to this court and who is solely responsible for such representations. Any sanctions imposed by the court in this matter should be imposed solely and specifically against **plaintiff's counsel** and not against plaintiff himself, who is, in any case, by the bad acts of these present defendants, reduced to living on social security in government subsidized housing . Plaintiff has never represented himself in this action,

Further, plaintiff is an individual who suffers from a brain injury, is unable to manage his own legal affairs and is represented in this matter by a guardian ad litem, his only son, Christian.

Further still, before ever instituting the present action, plaintiff and his son did retain this present writer for the sole purpose of determining whether there might exist a viable cause of action able to support a lawsuit. (SSDec InRe: Sanctions ¶¶ 4-8 )

In response, Plaintiff's counsel did perform certain researches, was aware of the likely hurdle presented by the doctrine of Res Judicata, and came to believe that a valid exception to this general rule could be established. (SSDec InRe: Sanctions ¶¶ 4-8 )

Plaintiff's counsel was, at all times relevant hereto aware that plaintiff suffers from a brain injury, that based on their long and experience together spanning some years, plaintiff trusted and relied on this present writer in all his legal dealings and that, to use plaintiff's counsel's own words, "If I asked Alex to do so, and told him that I thought it was a good idea, he would follow me off a cliff."

Plaintiff and his guardian ad litem reasonably relied on the representations of their retained counsel in bringing this action. They took the time and made diligent efforts to ascertain whether or not there existed a viable cause of action, retaining counsel and cooperating with him in his attempt to vindicate their rights. In bringing this action, plaintiff, and his guardian ad litem, relied completely, and reasonably, on their retained legal counsel and therefore should not be subject to sanctions.

To further assist the court in considering the issue of Sanctions, Plaintiff's counsel, who is solely responsible for any violation of Rule 11 in the bringing of the present matter, has prepared a declaration setting forth the factual basis underlying his decision to represent plaintiff in this action. Plaintiff hereby refers the court to that declaration (The Declaration of Stephen Steelman in Opposition to Defendants Request for Rule 11 Sanctions) so that the court may consider whether plaintiff's counsel violated any injunction set forth in Rule 11(b) 1-4. Plaintiff hereby incorporates by reference, as though fully set forth at length hereat the aforesaid declaration.

Respectfully submitted this 9th day of October, 2007,

By,

**THE LAW OFFICES OF STEPHEN W. STEELMAN**

_____/S/_____
**STEPHEN STEELMAN**
**Counsel to Plaintiff**
**Alexander P. Sommer**