EXHIBIT "F"

## BEFORE THE INSURANCE COMMISSIONER
## OF THE STATE OF CALIFORNIA

| | |
|---|---|
| In the Matter of the<br>Certificates of Authority of<br><br>UNUM LIFE INSURANCE COMPANY<br>OF AMERICA,<br><br>PROVIDENT LIFE AND ACCIDENT<br>INSURANCE COMPANY, and<br><br>THE PAUL REVERE LIFE INSURANCE<br>COMPANY,<br><br>    Respondents. | DECISION AND ORDER OF INSURANCE<br>COMMISSIONER UPON SETTLEMENT<br><br>File No. DISP05045984<br><br>File No. DISP05045985<br><br>File No. DISP05045986 |

WHEREAS, the Insurance Commissioner ordered an investigation be conducted into the business practices of Respondents, including an on-site examination of Respondents' claims, rating and underwriting practices; and

WHEREAS, Respondents acknowledge receipt of a copy of the Accusation in the above-entitled matter; and

WHEREAS, Respondents neither admit nor concede any actual or potential fault, wrongdoing or liability in connection with the allegations contained in the Accusation; and

WHEREAS, the Department of Insurance contends that the violations alleged in the Accusation, if heard and proved, would constitute grounds for the Insurance Commissioner to suspend Respondents' Certificates of Authority, impose civil penalties and issue an order prohibiting Respondents from engaging in the conduct at issue; and

WHEREAS, Respondents and the Department of Insurance have undertaken extensive discussions to resolve the issues in this proceeding, without either party admitting the other's

#351577v1

contentions, through compromise settlement without litigating the issues; and

WHEREAS, Respondents and the Department of Insurance have executed the California Settlement Agreement (CSA) attached hereto and incorporated by reference herein, and

WHEREAS, the terms of the CSA and the provisions of Section 12921(b)(1) of the Insurance Code require the Insurance Commissioner to approve the settlement of this matter, and

WHEREAS, this Decision and Order constitutes the approval of the Insurance Commissioner of the settlement of this matter upon the terms and conditions set forth in the CSA;

NOW THEREFORE, the Insurance Commissioner hereby approves the CSA and finds, without Respondents having had the opportunity to defend at a hearing, that Respondents, in certain instances, either individually or collectively, during the period with respect to which they were investigated by the Department of Insurance, engaged in the following acts or practices in violation of Sections 700 and 704 of the California Insurance Code:

- Knowingly applying a definition of "disability" in claims handling in a manner inconsistent with the definition of "total disability" set forth in California case law;
- Mischaracterizing the claimant's occupation and/or its duties in determining whether the claimant is disabled from performing with reasonable continuity the substantial and material duties of his or her own occupation;
- Selectively using independent medical examinations (IMEs) to Respondents' own advantage;
- Selectively using portions of medical records and IME findings to Respondents' own advantage;
- Overruling the opinion of the attending physician after Respondents' in-house medical personnel have conducted a "paper review" of the medical file;

- Overruling the opinion of in-house medical personnel who supported a finding of disability or the need for specific objective testing;
- Failing to train claims personnel adequately or correctly on the California legal definition of "disability," on how properly to evaluate a claimant's occupational duties, and on other policy provisions relevant to conducting a fair, thorough, objective claim investigation;
- Mischaracterizing nonsedentary nursing occupations as sedentary, then requiring nurses disabled from performing nonsedentary occupations to find work in sedentary nursing occupations (e.g., as a utilization review nurse) during the "own occupation" coverage period;
- Targeting certain types of claims for "resolution" (i.e., denial or termination of benefits) in the interest of improving "net termination ratios" – that is, for reasons other than the merits of individual claims or fair, thorough, objective investigations into those claims, such claims generally arising out of high benefit, noncancellable long term disability income policies previously heavily marketed, which had become costly for the company through increasing claims;
- Determining predominantly through an analysis of billing records that medical specialists are able to perform his or her 'own occupation' even though unable to perform with reasonable continuity the substantial and material duties of the specialty itself (e.g., surgery, delivering babies, chiropractic, etc.);
- Misapplying the partial and/or residual disability provisions in the policy;
- Inappropriately using aggressive surveillance on a claimant and misusing the results;
- Characterizing certain disabling conditions as "self-reported" (e.g., pain, limited range of motion, weakness), then accepting only objective test results to support disability resulting from these conditions even though no policy provision requires objective test results;
- Failing to request that the IME perform objective testing that could support a finding of disability resulting from a "self-reported condition," or ignoring objective test results from the IME that do support a finding of disability;

- Discounting objective test results by imputing the physiologically disabling condition to a "psychological component," thus triggering the "mental or nervous condition" limitation;
- Utilizing a policy provision limiting the "mental and nervous conditions" benefit to 24 months to unreasonably limit the time in which benefits are paid for physiologically-based disabilities, disabling on their own, which may or may not be accompanied by a psychological component;
- Including language in group policies that excludes coverage for pre-existing conditions "caused by, contributed to [by], or related to the disabling condition" or for "symptoms for which diagnostic treatment was performed or symptoms for which a prudent person would have sought treatment," so that a disabling condition would not have to have been diagnosed, treated or even in existence during the policy's pre-existing condition period for it to be excluded from coverage;
- Misapplying the "pre-existing condition" clause to deny meritorious claims, e.g., characterizing obesity as the pre-existing condition for a previously asymptomatic, undiagnosed and untreated musculoskeletal, cardiovascular, peripheral vascular, pulmonary or orthopedic disability;
- Offsetting for benefits it is only estimated the claimant might receive, instead of offsetting only for those benefits actually received by the claimant and appropriately offset under the law;
- Stating in correspondence to the claimant that the claimant must apply for Social Security Disability Income (SSDI) benefits in order to receive an unreduced benefit, when the policy contained no such duty;
- Failing to document claim files adequately regarding the so-called "roundtable" sessions at which substantive claims decisions were made;
- Failing to refer the claimant to the Department of Insurance in the event the claimant believes his or her claim has been denied or benefits have been terminated unfairly;

- Continuing to seek additional information where claimants have provided adequate proof of disability, thus unfairly shifting the burden of investigation to the claimant;
- Communicating to claimants under individual or government employer-sponsored group policies (i.e., policies not covered by ERISA) in a manner that could mislead the claimant into believing ERISA would apply, thus limiting a claimant's rights on appeal (among other things);
- Having an insured under an individual policy agree to make premium payments by payroll deduction/salary allotment, with the policy having no other connection to the employer, then asserting that the policy is employer-sponsored or employer-endorsed, therefore governed by ERISA;
- Paying a claim under a reservation of rights for extended periods of time, then terminating benefits and notifying the claimant of the company's intent to recover the benefits paid;
- Failing to disclose to the claimant additional benefits that might be available under the policy, e.g., a waiver of premium, a cost of living endorsement, a seat belt benefit;
- Compelling a claimant to accept an unreasonably low settlement offer through the above means and others, or resort to litigation.

ORDER

The Insurance Commissioner hereby approves the CSA attached hereto and issued simultaneously herewith.

The Insurance Commissioner hereby approves the policy forms referenced in the CSA attached hereto.

Respondents are hereby ordered to fulfill each and every term and obligation set forth in the CSA, at the time and in the manner set forth therein.

Respondents are prohibited from engaging in the conduct set forth in the Findings enumerated above.

Respondents shall pay a civil penalty in the amount of $8,000,000.00.

Respondents shall pay the costs of the Department of Insurance in bringing the enforcement action herein, in the amount of $598,503.00.

Respondents shall pay all reasonable future costs of the Department of Insurance to ensure Respondents' compliance with the terms of the CSA. Respondents shall pay such costs within thirty (30) days of the receipt of an itemized invoice. Invoices for costs shall be issued on a quarterly basis, commencing on January 1, 2006.

Respondents shall pay that total sum of $8,598,503.00 to the Department of Insurance within thirty (30) days of Respondents' receipt of an invoice for said amount.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal this 3rd day of October, 2005.

/s/
JOHN GARAMENDI
Insurance Commissioner