Stephen W. Steelman
THE LAW OFFICE OF STEPHEN W. STEELMAN
22 Battery Street, Suite 333
San Francisco, CA 94111
Tel.    (415) 593-3777
Fax    (415) 593-3778

Attorney for Plaintiff
Alexander P. Sommer

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

-oo0oo-

| | |
|---|---|
| ALEXANDER P. SOMMER, an individual | CASE NO. CIV 064927 |
| Plaintiff, | |
| v. | DECLARATION OF STEPHEN W. STEELMAN IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS |
| UNUM PROVIDENT CORPORATION, UNUM PROVIDENT LIFE INSURANCE COMPANY OF AMERICA, FIRST UNUM LIFE INSURANCE COMPANY; PAUL REVERE LIFE INSURANCE COMPANY; UNITED STATES LIFE INSURANCE COMPANY; AND DOES 1-300, | |
| Defendants. | |

1    I, Stephen W. Steelman, am attorney of record to plaintiff Alexander P. Sommer herein. I am, accordingly, thoroughly familiar with the facts and circumstances underlying this matter and could, and would if called to do so testify competently to the following:

1. During the years 2003 and 2004, I represented plaintiff Alexander P. Sommer in a legal malpractice action against his former attorney. That attorney had represented Mr. Sommer in the cases referred to by defendants herein as Sommer 1, 2 and 3;

2. Plaintiff was disappointed with the outcome of that legal malpractice action and felt, rightly, that he had not been adequately compensated for the losses suffered as a result of the wrongs inflicted by his former counsel's handling of his cases against these present defendants;

3. After the settlement of that legal malpractice action, and during or about November 2005, I became aware that the State of California Department of Insurance had conducted an investigation of these present defendants (hereinafter "UNUM"), that such investigation included, *inter alia* an investigation of the claims handling practices of these defendants and, that as a result of such investigation, the Insurance Commissioner of the State of California had levied a fine against UNUM in the amount of some Eight Million Dollars ($8,000,000.00) and had, further, issued certain "findings" against the insurers as set forth in the Complaint on file herein at ¶ 29 and in **EXHIBIT "F"** to the Declaration of Stephen Steelman in Opposition, filed and served concurrently herewith;

4. I communicated this information to plaintiff because I believed that it would give him some satisfaction. In fact, and perhaps foreseeably, the information angered Alex, in effect, opening old wounds;

5. After thinking about all of this for a few weeks, I contacted Alex and his son, Christian, and asked them whether they might be interested in bringing a suit against UNUM based on the Insurance Commissioner's findings. In response to my query, Alex and his son asked me to perform certain research to determine whether or not they might have a viable cause of action, given the previous litigation;

6. I agreed to do so and did, in fact, perform such research. I was paid for this work.

- 2 -

7. During the course of my research, I became aware that the issue of Res Judicata would have to be overcome if we were to have a chance of prevailing. I also came to believe that a colorable argument could be made that any projected Res Judicata defense offered by the defendants might reasonably be denied by the courts based on UNUM's stature as an insurer, it's demonstrable history of very bad behavior in the market place (in effect, a public policy exception) and what I believed to be UNUM's fraudulent conduct of the litigation of the cases referred to by defendants herein as Sommer 1, 2 and 3, which might more fairly be characterized as UNUM 10,001, 10,002 and 10,003, based on the amount of litigation with which our courts are burdened by the practices of this company and it's subsidiaries;

8. Based on such research and belief, I advised plaintiff that he did have a small chance of prevailing in an action against defendants and that, if he decided to go forward, I would represent him.

9. My assessment of the viability of the case was reflected in my retainer agreement which contains the following passage:

> The circumstances of my retention are as follows:
>
> In 1996 Alex instituted a lawsuit against his several disability insurance carriers. Such suit was based on a wrongful denial to pay Alex his disability benefits. This case was dismissed, with prejudice, due to the failure of Alex's then attorney, NAME REDACTED, to exhaust administrative remedies. NAME REDACTED appealed the court's decision all the way to the United States Supreme Court who refused to consider overturning the lower court's decision.
>
> Alex then sued the lawyer. I represented Alex in that lawsuit.
>
> Throughout my representation of Alex in the malpractice suit against Mr. NAME REDACTED, Alex repeatedly expressed a desire to sue his former insurers. In response to such expressions, and as you will remember, I repeatedly told Alex that the case against his former insurers was exhausted.
>
> However, subsequent to the settlement of that case, the Attorneys General of certain states as well as the *California Department of Insurance* sued and/or entered into settlement agreements with Alex's primary disability insurer, UNUM. As part of the settlement between the California Department of Insurance and UNUM, the Insurance Commissioner of the State of California has made certain "Findings." Included among the Insurance Commissioner's

- 3 -

"Findings," are findings of what I believe may be certain improper behaviors on the part of UNUM. In January of 2006, you retained me to do legal research regarding what effect, if any, these findings have on the ability of Alex to, in effect, reopen his case against UNUM. In fact, in as much as Alex would have any chance to litigate against UNUM, such case would be based on entirely new legal theories and so would not, technically, be a re-opening of Alex's old cases but entirely new cases based on entirely new legal theories.

I want to repeat here what I told you in the e-mail I sent to Christian in December, 2005, what I repeated, in writing, in the fee agreement we entered into in January 2006, and what I have verbally told both of you on several occasions, namely that any case against UNUM or any of it's subsidiary companies, is, at this point, very much an uphill battle. Not only are we the proverbial David facing the proverbial Goliath, we are also faced with very serious issues based on the Statute of Limitations and the legal principles of Res Judicata and Collateral Estoppel. As I told you, when pressed, in my office to give you a percentage estimate of your chances of success in this undertaking, if you had a first class lawyer such as Guy Kornblum or Ed Nevin, you might stand a twenty percent chance of prevailing - with me it might be fifteen percent. That might be optimistic. We stand only a very slim chance of prevailing in this matter.

10. I did not commence this case for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. At the time I agreed to enter into this case, I had performed legal research based on the facts and the law relevant to the proposed case, and believed sincerely that the claims and other legal contentions set forth int the Complaint are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law ;

11. It is my understanding of the duty of a plaintiff's attorney to agree to represent clients who's cases are just, even though such cases might present difficult issues. It is my understanding of the duty of an attorney that he, or she, should not limit their representation to clients whose cases are straightforward and will not endanger the attorney's personal reputation or economic status;

12. When I agreed to represent Alex Sommer, it was because I believed that he had been grievously wronged by a company with truly remarkable record of perpetrating similar wrongs against similarly injured people and of doing so simply for economic gain and at the expense of their insureds. I believed that there were colorable legal arguments to be

- 4 -

made to advance the case and that the case made sense for the client and for our society as a whole. I believed it my duty to represent Mr. Sommer and am, moreover, *certain* that it is my duty, once having agreed to do so, not to be backed down or cowed by threats made by UNUM against my personal fortune, such as it may be, which is how I interpret these defendants repeated threats to seek sanctions against me.

*Sworn, under penalty of perjury* of the laws of the State of California, this 9th day of October 2007, in the City and County of San Francisco, by:

**THE LAW OFFICE OF STEPHEN W. STEELMAN**

_____/S/_____
**STEPHEN STEELMAN**
**Counsel to Plaintiff**
**Alexander P. Sommer**

- 5 -